LAWRENCE EVERETT, Respondent, *v.* THE SUPREME COUNCIL, CATHOLIC BENEVOLENT LEGION, Appellant.

**Benefit associations — insurance — when rate of assessment and amount of benefit not vested or fixed — when member surrenders benefit certificate, unalterable without his consent, and accepts another providing that it shall be governed by amendments to constitution or laws, his rights are determinable by terms of new certificate — when amendment providing for increased assessment and that amount of deficiency in payment shall be lien on insurance enforcible — member chargeable, as matter of law, with notice of constitution, laws and amendments thereto.**

1. A subsequent amendment to the constitution and laws of a New York fraternal benefit society, without the member's consent, does not operate to raise the rate of assessment or reduce the amount of benefit as fixed by the certificate, unless the consent of the member to such changes is plainly evidenced by the language of the certificate itself, but where a reservation of authority to amend a charter or the constitution and by-laws of a society is clear, the right to have the rate of assessment and amount of benefit continued as originally provided is not vested or fixed beyond the possibility of reasonable changes to meet new conditions.

2. Where a member of a New York fraternal benefit society had originally a benefit certificate which could not be altered without his consent but surrendered it and accepted another bearing the

same date which provided that "any changes, additions, or amendments to the charter of this society, constitution or laws duly made or enforced subsequent to the issuance of the Benefit Certificate shall bind the member and his beneficiary and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to the application for membership," his rights are to be determined by the terms of the reissued certificate, and where, by an amendment to the constitution and by-laws, provision was made for a reserve fund to which each member was required to contribute, any deficiency to be a lien on the member's insurance, the amount of any such deficiency may properly, on his death, be deducted from the face value of the certificate. (*Beach* v. *Supreme Tent of Knights of Maccabees,* 177 N. Y. 100; *McClement* v. *Supreme Court, Order of Foresters,* 222 N. Y. 470, followed; *Kennedy* v. *Supreme Council, Catholic Benevolent Legion,* 188 App. Div. 613, criticised.)

3. As matter of law the insured was chargeable with notice, as a member of the order, of its constitution and laws and the amendments thereto and it was not necessary to establish actual receipt of notice by him of the change in the constitution and the laws and of the lien.

*Everett* v. *Supreme Council, Catholic Benevolent Legion,* 203 App. Div. 765, modified.

(Argued April 26, 1923; decided May 11, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 23, 1922, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived.

*Edward J. Connolly* for appellant. The contract provides in advance for its own modification. (*McGovern* v. *C. B. L.,* 200 App. Div. 845; *Sabin* v. *Phinney,* 134 N. Y. 428; *Shipman* v. *Protective Home Circle,* 174 N. Y. 398; *McClement* v. *Independent Order of Foresters,* 222 N. Y. 470; *Evans* v. *Supreme Council, R. A.,* 223 N. Y. 502.) The defendant had the right to amend its laws. (*Mims* v. *Supreme Lodge,* 241 U. S., 574; *Smythe* v. *Knights of Pythias,* 245 U. S. 594; *Schwemmer* v. *Supreme Council, C. B. L.,* 187 App. Div. 673; *Kennedy* v.

*Supreme Council, C. B. L.,* 188 App. Div. 613.) The defendant was compelled by the Insurance Law of the state and its own constitution and laws to charge the reserve deficiency lien against the certificate of Lawrence Everett, and he had notice of the charge. (*Sauerbrunn v. H. M. L. Ins. Co.,* 220 N. Y. 370; *Igel* v. *Phillips,* 183 App. Div. 224; *Thomas* v. *Knights of Maccabees,* 149 Pac. Rep. 12.)   When Pierce Everett surrendered his certificate in 1913 and accepted a new one, he submitted to the by-laws and statutes as they then existed. (*Breslow* v. *S. T. Masonic Relief Assn.,* 107 App. Div. 123.) By paying the increased rates from 1904 to his death, and making request for part payment of assessments, Pierce Everett ratified the amendments of 1904 in their entirety. (*Reilly* v. *Supreme Council, C. B. L.,* N. Y. L. J. April 19, 1917; *Larkin* v. *Supreme Council, C. B. L.,* N. Y. L. J. March, 1911; *Mock* v. *Supreme Council, R. A.,* 121 App. Div. 474; *Green* v. *Royal Arcanum,* 237 U. S. 531; *Mims* v. *Supreme Lodge, K. of P.,* 241 U. S. 574; *Smythe* v. *K. of P.,* 245 U. S. 549.)

*Joseph K. Ellenbogen* for respondent. It is a well-settled rule of law that this defendant has no right to deduct the so-called lien from the certificate. (*Kennedy* v. *Supreme Council, C. B. L.,* 188 App. Div. 613; 231 N. Y. 582; *Schwemmer* v. *Supreme Council, C. B. L.,* 187 App. Div. 673.)   There was no surrender of the original certificate and no new contract between the parties. (*Kennedy* v. *Supreme Council, C. B. L.,* 188 App. Div. 613; 231 N. Y. 582.)   The payment of the increased assessment did not amount to a waiver or modification of plaintiff's rights under the contract. (*Evans* v. *Supreme Council, R. A.,* 223 N. Y. 497; *Williams* v. *Supreme Council, etc.,* 80 App. Div. 402.)

*Hervey J. Drake* for Superintendent of Insurance, *amicus curiæ.*

POUND, J.   The question herein presented is as to the power of defendant, a New York fraternal assessment society, so to amend its constitution and laws as to charge against a member's benefit certificate a lien for failure to contribute to a reserve fund created for the benefit of members who should join the order after the creation of such fund, as required by an amendment to such constitution and laws enacted after deceased became a member of the society.

The familiar history is here repeated of such an organization giving insurance at inadequate, flat, uniform rates in the early years of its existence, and thereafter, when the experience tables of mortality had triumphed over hope and benevolence had proved unequal to the pecuniary demands upon it, attempting to provide more equitably for the cost of such insurance by imposing new and increased levies and demands on its members, old and new.   The theory advanced by such organizations is that they are a body of self-insurers united not for profit, to pay to one another an amount not exceeding the sum specified in their benefit certificates, to be raised by assessments on the members under an elastic constitution which permits them to adjust from time to time their levies and their payments to their ability to meet their obligations.   This theory has been adopted by the courts of New York with qualifications for the protection of the holders of benefit certificates which are asserted by the plaintiff herein and the question is whether, under our decisions, amendments to the constitution and laws of the order adopted after the member joined, which reduced the amount of the benefit, were binding on him.

On May 31, 1886, the father of plaintiff, under the name of Pierce Everard, at the age of 45 years, made written application for membership in the defendant, in his application directed that the benefit to which his

beneficiary might be entitled be paid upon his death to Margaret Everard, his wife; and among other things, stated in his application: " I further hereby promise and agree to make punctual payment of all dues and assessments for which I may become liable and to conform in all respects to the laws, rules and usages now *in force or which may hereafter be adopted* by the Supreme Council Catholic Benevolent Legion." Thereafter, on the 7th day of July, 1886, and upon this application, he was duly elected a member of the defendant and admitted to membership in a subordinate council of defendant known as St. Michael's Council, No. 28, located in Brooklyn, New York. At the time and as a part of his election and admission to membership the applicant signed an agreement as follows: " In the presence of these witnesses, I do, of my own free will and accord, faithfully promise that I will strictly comply with all the laws, rules and usages of the Catholic Benevolent Legion as established by its Supreme Council, that I will hold allegiance to the Supreme Council and be loyal thereto as the supreme authority of the entire Legion. That I will obey all orders emanating from the Supreme or State Councils or from the subordinate council of which I am a member, so long as they do not conflict with those of the Supreme Council or with any of my privileges as a citizen or my duties as a Roman Catholic."

On the 7th day of July, 1886, the defendant executed and delivered to the member a certificate of membership in writing, whereby it was certified that Pierce Everard had been accepted as a fourth grade member; that he was a fourth grade contributor to the Benefit Fund of the Legion and that the certificate was issued upon condition that the statements contained in his application for membership, and medical examination, were true and that he would strictly comply with the laws, rules and regulations of the Legion. Then appears the following: " These conditions being complied with, the Supreme

Council, Catholic Benevolent Legion hereby agrees to pay out of its Benefit Fund to Margaret Everard, wife, a sum of money not exceeding three thousand dollars, according to the provisions of law governing said fund upon the death of said member in good standing, provided he shall not have substituted another beneficiary or reduced the amount of said benefit under the rules governing Disability Benefits." The constitution and laws when Everard became a member provide that $3,000 shall be paid on the death of a fourth grade member.

This court has held that a subsequent amendment to the constitution and laws of a fraternal assessment society, without the member's consent, does not operate to raise the rate of assessment or reduce the amount of benefit as fixed by the certificate, unless the consent of the member to such changes is plainly evidenced by the language of the certificate itself, and that the beneficiary can recover the full amount stated in the original certificate although the member has refused to pay the increased rate. It was pointed out by CULLEN, J., in *Beach* v. *Supreme Tent of K. of M.* (177 N. Y. 100, 105) that it is quite easy for fraternal organizations to provide on the face of the certificate that " the payments therein specified should be subject to such modification as to amount, terms and conditions of payment and contingencies in which the same were payable as the endowment laws of the order from time to time might provide." (*Green* v. *Supreme Council, R. A.,* 206 N. Y. 591.) When they failed pointedly to direct the attention of their members on the face of the benefit certificate to the ambulatory nature of the contract, they were not permitted to avail themselves of their reserved rights as set forth in the application for membership. Thus a tender regard for the welfare of the beneficiary prevailed over the formal expression of the contract and the future welfare of the society. But the Supreme Court of the

United States has held that where the member in his original application has agreed to conform to the laws of the order then in force or thereafter to be enacted, the society has the power, under the provisions of the United States Constitution, to change such laws even so far as to affect rights to the benefit fund. (*Supreme Council Royal Arcanum* v. *Green,* 237 U. S. 531; *Supreme Lodge Knights of Pythias* v. *Mims,* 241 U. S. 574; *Supreme Lodge Knights of Pythias* v. *Smyth,* 245 U. S. 594.)

The New York decisions are based upon the construction of the contract made by the beneficiary society with its members. Where the reservation of authority to amend a charter or the constitution and by-laws of a society is clear, the right to have the rate of assessment and amount of benefit continued as originally provided is not vested or fixed beyond the possibility of reasonable changes to meet new conditions. (*McClement* v. *Supreme Court, Order of Foresters,* 222 N. Y. 470, 478.)

The certificate issued in 1886 is to be construed as providing unconditionally for the payment of $3,000 to the beneficiary named therein unless the member subsequently assented to changes in the constitution and laws which raised the rate of assessment or lowered the sum payable at death. The insured died on October 5, 1920, a member in good standing of the order, at the age of 79 years, having been a member for 34 years, and it is claimed by plaintiff that he is entitled to recover the full sum of $3,000 less a small deduction which is not in dispute. Before the member's death, two important changes took place: *First,* in 1900 the assessment was raised from $2.16 bi-weekly, or less than $20 a thousand, to $3.15 bi-weekly, or less than $30 a thousand. In 1904, under an amendment to the by-laws, the amount of the assessment was again increased to $7.86 an assessment. The member then took advantage of a provision of the amended by-laws which permitted him to pay 55% of such increased assessment and to have 45% thereof

charged against his benefit certificate. Three hundred and seventy-one dollars and ninety-four cents is charged against the benefit certificate on this account. No question is raised about the consent of the insured to these changes. In 1900 and again in 1904, when the assessment was raised, the increased assessments were paid by the member. *Secondly,* on September 2, 1904, Everett surrendered his original certificate by a written indorsement signed by him: " I hereby surrender my benefit certificate No. 9947," and requested that a new one be issued changing his name and that of his wife, the beneficiary named therein, from " Everard " to " Everett." This seems to have been a mere correction of a mistake in his name. The new certificate was issued in the same form as the old. On April 17, 1913, he again in like manner surrendered his benefit certificate, his wife having died, and requested that a new certificate, naming plaintiff, his son, as beneficiary, be issued. The new certificate having the same date as the original certificate and being indorsed, " Reissued, April 17, 1913; change of beneficiary," provides on its face: " The charter application for membership, medical examination, constitution and laws of the society, shall constitute the contract between the member and the society, and any changes, additions, or amendments to the charter of this society, constitution or laws duly made or enforced subsequent to the issuance of the Benefit Certificate shall bind the member and his beneficiary and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to the application for membership, and shall be set forth in the Benefit Certificate." It thus complies, in form and substance, with the suggestions of CULLEN, J., to meet the holding in the *Beach Case* (*supra*) that the consent of the member to future changes be brought home to him by the language of the certificate itself. This certificate the member accepted in writing

as of the date of the original certificate " on the conditions therein named."

In 1904 the constitution and by-laws had been further amended by providing in lieu of a further increase in the rate of assessment, which could not satisfactorily be made without making the cost prohibitive to the older members, a reserve fund and a reserve deficiency lien on each certificate then in force, in order to keep rates level and equalize the cost of insurance for new and old members. This change was made and finally put into operation with the approval of the state insurance department and to meet the very heavy mortality which defendant was suffering. Each member was required to maintain to his credit a net balance at least equal to the reserve on his certificate, any deficiency to be a lien upon a member's insurance. At the time of this readjustment, then, the members were given the option of continuing to pay the assessments at the rate then in force, provided a lien were charged on their certificate representing the difference between an assessment at their attained ages and the old assessment. They could pay the increased cost in cash or by the more easy terms whereby the difference was made a charge on their benefit certificates. The alternative was to make the cost of carrying new members large enough to pay the reserve, and let the old members reap the advantage. One or the other plan was essential to preserve the association from complete collapse, and the former seemed more equitable and better calculated to enable the association to recruit new members. The lien on insured's benefit certificate has been computed at $1,676.71 and defendant seeks to deduct this sum from the face of the certificate under the terms expressed in the reissued certificate. Plaintiff asserts that the rights of the parties were fixed by the original certificate and that the member was not bound by this amendment.

In *Kennedy* v. *Supreme Council, C. B. L.* (188 App.

Div. 613; affd., without opinion, 231 N. Y. 582) it was said, but not necessarily, by the court below, on facts not essentially different from those now before us, that such a new certificate was to be deemed merely a reissue of the original certificate with merely a change of beneficiary and that it did not imply assent to the amended constitution and laws in force at the date of reissue. The question of law was not before this court on any exception surviving unanimous affirmance and remained an open one.

We are of the opinion that the rights of the members are to be determined by the terms of the reissued certificate. Everett was a member in good standing at the time of his death. For many years the defendant carried him at less than the cost of his insurance. Death would have brought to his beneficiary the payment of the full sum specified. As he continued to live, it was not inequitable that he should be called on to bear the burdens of a brother laid on him by his brothers with his consent. (*Case* v. *Supreme Tribe of Ben Hur*, 106 Neb. 220; 18 A. L. R. 1172.) The sorrows of the old are often multiplied and the expectancies of their heirs disappointed. When the assessments were increased Everett paid whatever was required of him and did whatever was necessary for him to do under the constitution and by-laws. He knew that his rights as a member were defined by the constitution and by-laws and he accepted the new certificate without inquiry or protest. He knew, or was chargeable with notice, of the government, constitution and laws of the defendant. By local legal interpretation he had originally a benefit certificate which could not be altered without his consent, although in his application he had agreed to conform in all respects to future amendments of the laws of the order. He surrendered it and accepted another bearing the same date, which by verbal changes conformed to the original intention of at least the insurer to issue

a certificate subject in all proper respects to future changes. He thereby, no fraud or deceit being shown, consented to the changes which had been made in 1904, in relation to the deficiency lien and stood in the same position in relation to the defendant as if the original certificate had been issued in the form in which it was reissued.

It is urged that this result is grossly unfair; that after the member had paid assessments for many years the entire insurance might in time be eaten up by the lien against it and nothing might be left for the beneficiary. If the member has the protection which he contracts for at its fair value, the beneficiary cannot complain when the society offers him the reduced remainder, in lieu of that undiminished principal which he hoped for. If the assessment had been raised according to cost, year by year, according to actuarial experience, the member's burdens might well have increased beyond his ability or disposition to pay.

The trial judge found as a fact that no notice of the change in the constitution and the laws and of the lien was received by the member. As matter of law he was chargeable with notice as a member of the order of its constitution and laws, and the amendments thereto, and it was not necessary to establish actual receipt of such notice by him. (*McClement* v. *Supreme Court Order of Foresters, supra.*)

The judgment should be modified by reducing the amount of the principal recovery to $951.45, and as so modified affirmed, with costs to appellant in all courts.

HOGAN, CARDOZO, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur; HISCOCK, Ch. J., absent.

Judgment accordingly.