Scileppi, J.
In 1929 the respondent joined the appellant Moving Picture Machine Operators’ Union of Greater New York, Local 306 (Union). Although respondent has continued to maintain his membership in the Union up until the present time, in 1944 he left the industry for health reasons and established residence in Florida. Just prior to his removal to Florida, the Union incorporated within its constitution a retirement benefits plan which provided that all members who shall attain the age of 60- years and have completed 20 years of continuous membership shall receive a weekly benefit of $21, provided they have paid the required assessments.
On January 23, 1951 the Union succeeded in obtaining a collective bargaining agreement which provided for the establishment of the Pension Fund of Moving Picture Machine Operators’ Union of Greater New York, Local 306, the other appellant herein (hereinafter referred to as jointly administered fund or fund).
The new fund was to be financed entirely out of employer contributions based upon 5% of their employees’ basic weekly salaries; however, those members such as respondent, who did not work for contributing employers, could participate on payment of contributions identical in amount to that paid by all members under the predecessor union administered plan. The jointly administered fund assumed the then existing obliga *508 tions of the Union to pay the $21 weekly benefits to all members then in retirement and undertook to increase the weekly benefits to $30 for all future retirees, including participants such as respondent, who were not employed by contributing employers.
In 1956, notwithstanding an increase of employer contributions of from 5% to 7% of employees’ salaries, the jointly administered fund was in serious financial difficulty. To alleviate this financial burden, the Union and the trustees of the fund proposed an amendment to the Union constitution which would increase the contributions of those members who did not work for contributing employers and would also defer the retirement age of such members from age 60 to age 65. In April, 1956 the membership adopted this amendment to the constitution.[1] In June, 1956 the trustees of the fund unanimously adopted a resolution incorporating the constitutional amendment within their rules and regulations. At the time of the adoption of the amendment and resolution, the respondent was 53 years of age and, therefore, had not as yet satisfied the prerequisites for retirement as originally promulgated. The respondent paid the additional assessments and rendered no protest to the amendment or the resolution prior to the filing of a complaint with the New York 'State Insurance Department in June of 1964.
In November, 1967 the respondent became 65 years of age and began receiving a pension on an application filed without prejudice to the case at bar.
The instant action was commenced in April, 1965 solely for the purpose of recovering that amount which represents the pension benefits respondent allegedly should have received from his 60th to his 65th birthday and the contributions he paid during that interval of time. The appellants moved to dismiss the complaint. Special Term denied the motion holding that “ [respondent] obtained a contractual right—a vested interest—to his pension by fulfilling the requirements set forth at the institution of the plan ”. In late 1965 the respondent moved for summary judgment. Special Term partially granted the *509 motion holding that the respondent obtained a vested interest in the pension plan from its inception • which could not be affected by the subsequent amendments to the plan. Reserved for trial were the issues of the respective liabilities of the appellants and the amount of damages. The Appellate Division unanimously affirmed both orders of Special Term. Leave to appeal to our court on a certified question was denied. Thereafter respondent obtained final summary judgment against the appellant fund but his motion was denied as against the Union. The present appeal has brought up for review the intermediate unanimous affirmance by the Appellate Division (CPLR 5602, subd. [a], par. [1], cl. [ii]).
Simply stated, the primary issue presented is what effect, if any, did the 1956 amendment have on respondent’s right to receive retirement benefits. The respondent takes the position that, although the 1956 amendment is binding on all members who joined subsequent to its adoption, the amendment cannot affect the rights of those members who joined prior to its adoption notwithstanding the fact that those members had not as yet satisfied the original requirements because their rights became fixed and were vested at the time they joined.
The appellants argue that all members obtained rights. However, these rights were not so fixed or vested as to be rendered invulnerable to such reasonable changes promulgated in good faith, unless, of course, a member had already satisfied the preexisting requirements prior to adoption of the amendment. This view is evidenced by a portion of the resolution incorporating the amendment into the rules and regulations of the fund. It states: “ Nothing[1] contained in this resolution shall be held to affect the payment of pensions to union members already receiving them or whose applications for retirement have heretofore been approved. ”
It is our opinion that the appellants are correct.
In Everett v. Supreme Council, Catholic Benevolent Legion (236 N. Y. 62, 68), a case involving the question of whether an amendment to the constitution and laws of a fraternal assessment society, which reduced the amount of benefit, was binding on a member who had joined before the adoption of the amendment, our court stated: “ Where the reservation of authority to amend a charter or the constitution and by-laws of a *510 society is clear, the right to have the rate of assessment and amount of benefit continued as originally provided is not vested or fixed beyond the possibility of reasonable changes to meet new conditions.” (See, also, the recently decided case in the United States Court of Appeals for the District of Columbia, Gaydosh v. Lewis, 410 F. 2d 262).
The respondent attempts to distinguish the Everett case by stating that the 1944 Constitution did not reserve the power to amend the pension plan and, even if it had, he states, in a letter submitted after oral argument, the 1944 'Constitution did not create his right because the Constitution merely incorporated the pension plan that existed at the time he became a member and that plan reserved no right to amend. We find these contentions to be completely without merit.
While it is true that the specific article of the Constitution which provides for the establishment of the pension plan does not itself reserve a power to amend, it is clear that such power is specifically set forth in article XI of the Constitution.
Respondent’s second attempt to distinguish the Everett case is specious. Although there is some evidence that a pension plan did exist prior to the plan established in the 1944 constitution, there is nothing in the record to indicate that the prior plan was merely incorporated into the constitution. Moreover, even if there was such evidence, the earlier plan not having been made part of the record, there is nothing to indicate that the power to amend was not included therein. Finally, for the respondent to argue that his rights arose pursuant to any instrument other than the constitution is completely inconsistent with the prayer in his complaint, to wit:
‘ ‘ Wherefore [respondent] demands judgment against the [appellants];
“ 1. For a declaratory judgment that [respondent] is entitled to pension rights under the Constitution of [appellant] union, which said rights accrued on November 25th, 1962 ” (respondent’s 60th birthday) (emphasis added).
Having determined that respondent’s rights were subject to the amendment in question, we need not reach the question of whether respondent should be estopped by his failure to raise any objection for eight years after the amendment was adopted.
*511 A subsidiary question unanswered by the courts below remains for our consideration.
The respondent argues that, even assuming, arguendo, he failed to satisfy the requirements when he reached age 60, the trustees of the fund were empowered to waive requirements to provide pensions for needy members who, at the time of application, would not be otherwise eligible; that he was in need and the trustees ’ failure to waive was an abuse of discretion. This is an untenable position.
The applicable provision to which respondent refers states: “ II. Effective June 6, 1956, (a) he has, at the time he applies for said Pension, (1) attained the age of sixty (60); and (2) completed twenty (20) years of continuous and uninterrupted Service Credit immediately prior to the date of his retirement hereunder; and (3) been actively employed with an Employer under contract with the Union (i.e., over whom the Union has jurisdiction by verbal or written agreement) or been on the Union’s unemployed list for hiring as an active unemployed registrant for at least a total of fifteen (15) years or seven hundred eighty (780) weeks; and (4) been so employed or unemployed for fifty-two (52) weeks within the fifteen (15) month period immediately preceding the date of application for retirement, provided that this requirement may be waived by the Trustees upon proof acceptable to them that the applicant was physically incapable of being so employed (or engaging in any gainful employment); ” (emphasis added).
The only evidence submitted to substantiate a claim of respondent’s being physically incapable of engaging in any gainful employment is the Union letter of introduction dated August 14, 1944 that respondent obtained from the Union to facilitate his search for employment in Florida. It stated:
“ The bearer of this letter, Mr. Morris Sarnow, is a member of Local 306 in good standing.
‘ ‘ Upon advice of his physician Brother Sarnow will have to remain in Miami for a long period and being without adequate support would like to obtain some work through you, if possible.”
This can hardly be viewed as evidence of the requisite inability to perform any gainful employment so as to justify a finding of an abuse of discretion on the part of the trustees.
*512 Accordingly, the judgment appealed from should he reversed and the defendants’ motion to dismiss the complaint granted.
Chief Judge Ftjld and Judges Burke, Bergan, Keating and Jasen concur; Judge Breitel taking' no part.
Judgment reversed, without costs, and case remitted to Special Term for further proceedings in accordance with the opinion herein.

. Apparently the benefits realized from the additional burdens placed upon members such as respondent were insufficient to overcome the fund’s financial difficulties. This is evidenced by increases in contributing employer’s contributions to 10% in July, 1957 and to 15% in September, 1962. However, no further burdens were placed upon members such as respondent.