## UNITED STATES *v.* PERKINS.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 422. Submitted May 8, 1896. — Decided May 25, 1896.

Personal property, bequeathed by will to the United States, is subject to an inheritance tax under state law.

Under the statutes of New York the United States are not a corporation, exempted from such inheritance tax.

THIS was a writ of error to an order of the General Term of the Supreme Court, affirming an order of the Surrogate's Court of Suffolk County, assessing an inheritance tax of $3964.23 upon the personal property of William W. Merriam, bequeathed by him to the United States.

It appeared that Merriam, who was a resident of Suffolk County, died on January 30, 1889, leaving a last will and testament, by which he devised and bequeathed all his estate, both real and personal, to the United States government. Upon the petition of the executor an appraiser was appointed, and upon his report the Surrogate fixed the tax at the above amount. On appeal to the General Term of the Supreme Court the order of the Surrogate's Court was affirmed, and upon a further appeal to the Court of Appeals the order of the Supreme Court was affirmed, and the case remanded to that court for final judgment, which was entered against the United States March 31, 1894. Whereupon the United States and the executor joined in suing out this writ of error. Defendant in error is the county treasurer of Suffolk County.

*Mr. Solicitor General* for plaintiffs in error.

*Mr. Timothy M. Griffing* for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This case raises the single question whether personal

property bequeathed by will to the United States is subject to an inheritance tax under the laws of New York.

By chapter 483, Laws of 1885, as amended by chapter 215, Laws of 1891, it was enacted as follows: "Sec. 1. After the passage of this act all property which shall pass by will or by the intestate laws of this State from any person who may die seized or possessed of the same while a resident of this State, . . . to any person or persons, or to any body politic or corporate, in trust or otherwise, . . . other than to or for societies, corporations and institutions now exempted by law from taxation, or from collateral inheritance tax, shall be and is subject to a tax at the rate hereinafter specified," etc.   •

By chapter 399 of the Laws of 1892, Vol. 1, entitled "An act in relation to taxable transfers of property," (sec. 1,) "a tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over, . . . to persons or corporations not exempt by law from taxation on real or personal property." By sec. 23 of this law certain previous acts were repealed, subject to a saving clause contained in sec. 24, to the effect that the repeal should not affect or impair any act done, or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the passage of this act. The twenty-fifth section also provided that the provisions of this act, so far as they were substantially the same as those of the laws existing April 30, 1892, should be construed as a continuation of such laws, modified or amended according to the language employed in this act, and not as new enactments.

The testator Merriam died January 30, 1889, but the tax was not assessed until February 16, 1893, after the act of 1892 had taken effect. Upon this state of facts, the Court of Appeals of New York was of opinion that the case was covered by the act of 1892, although it was thought that the legacy was subject to taxation whether it was taxed under that or the previous acts. This ruling as to the applicability of the act of 1892 seems to conflict with the case of *Seaman*, 147 N. Y. 69, but the difference is not material in this case.

The case really presents two questions:

1. Whether it is within the power of the State to tax bequests to the United States.

2. Whether, under these statutes, the United States are a corporation exempted by law from taxation.

1. While the laws of all civilized States recognize in every citizen the absolute right to his own earnings, and to the enjoyment of his own property, and the increase thereof, during his life, except so far as the State may require him to contribute his share for public expenses, the right to dispose of his property by will has always been considered purely a creature of statute and within legislative control. "By the common law, as it stood in the reign of Henry II, a man's goods were to be divided into three equal parts; of which one went to his heirs or lineal descendants, another to his wife, and a third was at his own disposal; or if he died without a wife, he might then dispose of one moiety, and the other went to his children; and so, *e converso*, if he had no children, tho wife was entitled to one moiety, and he might bequeath the other; but if he died without either wife or issue, the whole was at his own disposal." 2 Bl. Com. 492. Prior to the Statute of Wills, enacted in the reign of Henry VIII, the right to a testamentary disposition of property did not extend to real estate at all, and as to personal estate was limited as above stated. Although these restrictions have long since been abolished in England, and never existed in this country, except in Louisiana, the right of a widow to her dower and to a share in the personal estate is ordinarily secured to her by statute.

By the Code Napoleon, gifts of property, whether by acts *inter vivos* or by will, must not exceed one half the estate if the testator leave but one child; one third, if he leaves two children; one fourth, if he leaves three or more. If he have no children, but leaves ancestors, both in the paternal and maternal line, he may give away but one half of his property, and but three fourths if he have ancestors in but one line. By the law of Italy, one half a testator's property must be distributed equally among all his children; the other half he may

leave to his eldest son or to whomsoever he pleases. Similar restrictions upon the power of disposition by will are found in the codes of other continental countries, as well as in the State of Louisiana. Though the general consent of the most enlightened nations has, from the earliest historical period, recognized a natural right in children to inherit the property of their parents, we know of no legal principle to prevent the legislature from taking away or limiting the right of testamentary disposition or imposing such conditions upon its exercise as it may deem conducive to public good.

In this view, the so called inheritance tax of the State of New York is in reality a limitation upon the power of a testator to bequeath his property to whom he pleases; a declaration that, in the exercise of that power, he shall contribute a certain percentage to the public use; in other words, that the right to dispose of his property by will shall remain, but subject to a condition that the State has a right to impose. Certainly, if it be true that the right of testamentary disposition is purely statutory, the State has a right to require a contribution to the public treasury before the bequest shall take effect. Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the State that it becomes the property of the legatee. This was the view taken of a similar tax by the Court of Appeals of Maryland in *State* v. *Dalrymple*, 70 Maryland, 294, 299, in which the court observed: "Possessing, then, the plenary power indicated, it necessarily follows that the State in allowing property . . . to be disposed of by will, and in designating who shall take such property where there is no will, may prescribe such conditions, not in conflict with or forbidden by the organic law, as the legislature may deem expedient. These conditions, subject to the limitation named, are, consequently, wholly within the discretion of the General Assembly. The act we are now considering plainly intended to require that a person taking the benefit of a civil right secured to him under our laws should pay a certain premium for its enjoyment. In other words, one of the conditions upon which strangers and

collateral kindred may acquire a decedent's property, which is subject to the dominion of our laws, is, that there shall be paid out of such property a tax of two and a half per cent into the treasury of the State. This, therefore, is not a tax upon the property itself, but is merely the price exacted by the State for the privilege accorded in permitting property so situated to be transferred by will or by descent or distribution."

That the tax is not a tax upon the property itself, but upon its transmission by will or by descent, is also held both in New York and in several other States, *Matter of the Estate of Swift,* 137 N. Y. 77, in which it is said, p. 85, that "the effect of this special tax is to take from the property a portion, or a percentage of it, for the use of the State, and I think it quite immaterial whether the tax can be precisely classified with a taxation of property or not. It is not a tax upon persons." *Matter of Hoffman,* 143 N. Y. 327; *Schoolfeld's Executor* v. *Lynchburg,* 78 Virginia, 366; *Strode* v. *Commonwealth,* 52 Penn. St. 181; *In re Cullum,* 145 N. Y. 593. In this last case, as well as in *Wallace* v. *Myers,* 38 Fed. Rep. 184, it was held that, although the property of the decedent included United States bonds, the tax might be assessed upon the basis of their value, because the tax was not imposed upon the bonds themselves, but upon the *estate* of the decedent, or the privilege of acquiring property by inheritance. *Eyre* v. *Jacob,* 14 Grattan, 422; Dos Passos on Inheritance Tax Law, chap. 2, sec. 8, and cases cited. Such a tax was also held by this court to be free from any constitutional objection in *Mager* v. *Grima,* 8 How. 490, 493, Mr. Chief Justice Taney remarking that "the law in question is nothing more than an exercise of the power which every State and sovereignty possesses, of regulating the manner and terms within which property, real and personal, within its dominion may be transferred by last will and testament, or by inheritance; and of prescribing who shall and who shall not be capable of taking it. . . . If a State may deny the privilege altogether, it follows that when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or

policy." To the same effect is *United States* v. *Fox*, 94 U. S. 315.

We think that it follows from this that the act in question is not open to the objection that it is an attempt to tax the property of the United States, since the tax is imposed upon the legacy before it reaches the hands of the government. The legacy becomes the property of the United States only after it has suffered a diminution to the amount of the tax, and it is only upon this condition that the legislature assents to a bequest of it.

2. Whether the United States are a corporation "exempt by law from taxation," within the meaning of the New York statutes, is the remaining question in the case. The Court of Appeals has held that this exemption was applicable only to domestic corporations declared by the laws of New York to be exempt from taxation. Thus, in *Matter of Estate of Prime*, 136 N. Y. 347, it was held that foreign religious and charitable corporations were not exempt from the payment of a legacy tax, Chief Judge Andrews observing (p. 360): "We are of opinion that a statute of a State granting powers and privileges to corporations must, in the absence of plain indications to the contrary, be held to apply only to corporations created by the State and over which it has power of visitation and control. . . . The legislature in such cases is dealing with its own creations, whose rights and obligations it may limit, define and control." To the same effect are *Catlin* v. *Trustees of Trinity College*, 113 N. Y. 133; *White* v. *Howard*, 46 N. Y. 144; *Matter of Balleis*, 144 N. Y. 132; *Minot* v. *Winthrop*, 162 Mass. 113; Dos Passos, chap. 3, sec. 34. If the ruling of the Court of Appeals of New York in this particular case be not absolutely binding upon us, we think that, having regard to the purpose of the law to impose a tax generally upon inheritances, the legislature intended to allow an exemption only in favor of such corporations as it had itself created, and which might reasonably be supposed to be the special objects of its solicitude and bounty.

In addition to this, however, the United States are not one of the class of corporations intended by law to be exempt

from taxation.    What the corporations are to which the exemption was intended to apply are indicated by the tax laws of New York, and are confined to those of a religious, educational, charitable or reformatory purpose.    We think it was not intended to apply it to a purely political or governmental corporation like the United States.    *Catlin* v. *Trustees of Trinity College*, 113 N. Y. 133; *Matter of Estate of Van Kleeck*, 121 N. Y. 701; Dos Passos, chap. 3, sec. 34.    In the *Matter of Hamilton*, 148 N. Y. 310, it was held that the execution did not apply to a municipality, even though created by the State itself.

Upon the whole, we think the construction put upon the statute by the Court of Appeals was correct, and the judgment of the Supreme Court is, therefore,

*Affirmed.*

M<small>R</small>. J<small>USTICE</small> H<small>ARLAN</small> dissented.