NORTHERN TRUST CO. et al. v. LEDERER, Collector of Internal Revenue.

(District Court, E. D. Pennsylvania. May 16, 1919.)

No. 5792.

1 INTERNAL REVENUE ⊝8—INHERITANCE TAXES—DEDUCTIONS.

In view of the history of the legislation, collateral inheritance taxes imposed by the state of Pennsylvania under Collateral Inheritance Tax Act, §§ 1, 3, 5, 9, and 11, are to be treated as paid by the estate, and may be deducted as expenses of administration, or claims against the estate, or other charges against the estate allowed by the laws of the state, within Act Sept. 8, 1916, §§ 201, 203 (Comp. St. 1918, §§ 6336½b, 6336½d), imposing a federal tax upon the transfer of the net estate of decedents.

At Law. Action by the Northern Trust Company and Henry R. Zesinger, executors under the will of Lewis W. Klahr, deceased,

⊝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

against Ephraim Lederer, Collector of Internal Revenue. On trial by the court without a jury. Judgment for plaintiffs.

Wm. Henry Snyder and Wm. M. Stewart, Jr., both of Philadelphia, Pa., for plaintiffs.

Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The plaintiffs, executors under the will of Lewis W. Klahr, deceased, were assessed by the defendant, the collector of internal revenue, with a tax under the provisions of sections 201, 202 and 203 of title 2 of the act of Congress of September 8, 1916 (Act Sept. 8, 1916, c. 463, 39 Stat. 777, 778 [Comp. St. 1918, §§ 6336½b, 6336½c, 6336½d]), entitled "An act to increase the revenue and for other purposes," in the amount of $79,172.10, as a tax upon the transfer of the net estate of the decedent. The sections bearing upon the controversy are as follows:

"Sec. 201. That a tax (hereinafter referred to as the tax), equal to the following percentages of the value of the net estate, to be determined as provided in section 203, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act:

"[Here follow the percentages based upon the amount by which said net estate exceeds $50,000.]

"Sec. 203. *Net Value of the Estate, How Determined.*—For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages, losses incurred during the settlement of the estate arising from fires, storms, shipwreck or other casualty, and from theft, when such losses are not compensated for by insurance or otherwise, support during the settlement of the estate of those dependent upon the decedent, and such other charges against the estate, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered."

The plaintiffs claimed that in assessing the amount of the tax, in order to ascertain the value of the net estate as provided by section 203, there should be deducted from the value of the estate the collateral inheritance tax due, and subsequently paid, to the commonwealth under the Pennsylvania Act of May 6, 1887 (P. L. 79), amounting to $39,450.92. This deduction not being allowed, the entire amount of the tax assessed was paid under protest as to the sum of $2,331.56; that being the difference between the amount assessed and paid and the amount which would have been assessed and paid if plaintiffs' claim had been allowed. The plaintiffs complied with the requirements of the revenue laws in relation to claim to the Commissioner for refund, and, the claim having been rejected, brought this suit within the statutory period after rejection of the claim for the recovery of the said sum of $2,331.56, with interest from November 1, 1917, the date of payment.

There is no ambiguity in the language of the act of Congress. It imposes the tax "upon the transfer of the net estate" of the decedent. It provides that the value of the net estate shall be determined by de-

ducting, from the value of the gross estate "administration expenses," "claims against the estate" and "such other charges against the estate, as are allowed by the laws of the jurisdiction, * * * under which the estate is being administered." If, in determining the value of the net estate upon the transfer of which the tax is laid, the 5 per cent. collateral inheritance tax is a tax or charge upon the estate of the decedent and included within any of the above items of deduction, the collection of the amount in suit was unwarranted. If the collateral inheritance tax is in fact a tax against the legatee upon the privilege of receiving the transfer of the legacy passing from the decedent at his death, and not within the items of deduction, its collection was lawful.

Section 1 of the Collateral Inheritance Tax Act (Purdon's Dig. [13th Ed.] p. 603) provides that:

"All estates, * * * passing from any person, who may die seised or possessed of such estates," to collaterals "shall be * * * subject to a tax of five dollars on every hundred dollars of the clear value of such estate or estates, * * * to be paid to the use of the commonwealth. All owners of such estates, and all executors and administrators and their sureties, shall only be discharged from liability for the amount of such taxes or duties, * * * by having paid the same over. * * * No estate which may be valued at a less sum than two hundred and fifty dollars shall be subject to the duty or tax."

Section 3 provides that in the case of reversionary interests:

"The tax * * * shall not be payable, nor interest begin to run thereon, until the person * * * liable for the same shall come into actual possession * * * by the termination of the estates for life or years, and the tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner: * * * Provided, that the owner shall have the right to pay the tax at any time prior to his coming into possession and, in such cases, the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life estate or estates for years: And provided further, that the tax on real estate shall remain a lien on the real estate on which the same is chargeable until paid. And the owner of any personal estate shall make a full return of the same to the register of wills of the proper county, within one year from the death of the decedent, and within that time enter into security for the payment of the tax, to the satisfaction of such register; and in case of failure so to do, the tax shall be immediately payable and collectible."

Section 5 provides:

"The executor, or administrator, or other trustee, paying any legacy or share in the distribution of any estate, subject to the collateral inheritance tax, shall deduct therefrom at the rate of five dollars in every hundred dollars, upon the whole legacy or sum paid; or if not money, he shall demand payment of a sum to be computed at the same rate, upon the appraised value thereof, for the use of the commonwealth; and no executor or administrator shall be compelled to pay or deliver any specific legacy or article to be distributed, subject to tax, except on the payment into his hands of a sum computed on its value as aforesaid; and in case of neglect or refusal on the part of said legatee to pay the same, such specific legacy or article, or so much thereof as shall be necessary, shall be sold by such executor or administrator at public sale, after notice to such legatee, and the balance that may be left in the hands of the executor or administrator shall be distributed, as is or may be directed by law; and every sum of money retained by any executor or administrator, or paid into his hands on account of any legacy

or distributive share, for the use of the commonwealth, shall be paid by him without delay."

Section 9 provides:

"It shall be the duty of any executor or administrator, on the payment of collateral inheritance tax, to take duplicate receipts from the register, one of which shall be forwarded forthwith to the auditor general, whose duty it shall be to charge the register receiving the money with the amount, and seal with the seal of his office, and countersign the receipt and transmit it to the executor or administrator, whereupon it shall be a proper voucher in the settlement of the estate."

Section 11 provides:

"Whenever debts shall be proven against the estate of a decedent, after distribution of legacies from which the collateral inheritance tax has been deducted, in compliance with this act, and the legatee is required to refund any portion of a legacy, a proportion of the said tax shall be repaid to him by the executor or administrator, if the said tax has not been paid into the state or county treasury, or by the county treasurer, if it has been so paid."

The nature of collateral inheritance taxes has been the subject of numerous decisions and the nature of succession and legacy taxes was very amply discussed by Mr. Justice White in Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969, and he cites with approval the case of United States v. Perkins, 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287:

"The question was whether property bequeathed to the United States could be lawfully included in a succession tax. It was decided that it could be. In the opinion, delivered by Mr. Justice Brown, it was said (163 U. S. 628 [16 Sup. Ct. 1075, 41 L. Ed. 287]): 'The tax is not upon the property in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the state that it becomes the property of the legatee. * * * We think that it follows from this that the act in question is not open to the objection that it is an attempt to tax the property of the United States, since the tax is upon the legacy before it reaches the hands of the government. The legacy becomes the property of the United States only after it has suffered a diminution to the amount of the tax, and it is only upon this condition that the Legislature assents to a bequest of it.'"

In Howell's Estate, 147 Pa. 164, 23 Atl. 403, the question was whether the executor was liable to pay the tax where seven legacies of $200 each were bequeathed, respectively, to seven charitable institutions. This brought squarely before the court the question whether the exemption of estates of less than $250 in value applied to the estate of the decedent or the estate of the legatee. If the tax had been laid upon the privilege of the legatee to the transfer of the estate passing, it would no doubt have been held that the exemption applied to each legacy. Judge Hanna, who wrote the opinion for the orphans' court, said:

"What, then, is intended by the use of the phrase 'all estates'? It is strongly urged that it is meant legacies, and of course both pecuniary and specific, with annuities, and distributive shares in case of intestacy, and if they be less than $250 they are exempt from the tax. But such has never been our understanding of the meaning of the act, and is contrary to the undisputed interpretation and uniform practice of this court since the passage of the act of 1826, now more than 65 years. When the Legislature said 'all

estates' shall be liable, it meant that which a person shall die seised or possessed of, and shall leave either by will or through intestacy to be administered according to the laws of the commonwealth; in other words, his property real or personal. This, we think, is clear, from an examination of all the statutes passed upon the subject. The act of 1887, which is merely a compilation of the prior acts, and declaratory of the law as found therein, as well as in decisions of the Supreme Court, and in effect intended to provide for the better collection of the tax, as shown by our Brother Penrose in Del Busto's Estate, 45 Legal Intell. 474, indicates throughout, by the word 'estate,' that the property of the decedent was contemplated, and not the interest therein of the legatee or distributee."

The exceptions were dismissed and the decree affirmed per curiam by the Supreme Court.

In Finnen's Estate, 196 Pa. 72, 46 Atl. 269, where the testator left real and personal property amounting to about $50,000, most of which was bequeathed to certain charities, the collateral inheritance appraisers assessed a tax against the charitable bequests. The executors appealed from the appraisement and the orphans' court dismissed the appeal. The decree of the orphans' court was affirmed by the Supreme Court, and in the opinion of Mr. Chief Justice Green, it was held:

"That which the legatee gets and keeps is the aggregate sum bequeathed, less the amount of the tax. The tax must be retained by the person who has the decedent's property in charge. It is therefore not a tax upon the property or money bequeathed, but a diminution of the amount that otherwise would pass under the will or other conveyance, and hence that which the legatee really receives is not taxed at all. It is that which is left after the tax has been taken off. It is only imposed once, and that is before the legacy has reached the legatee and before it has become his property."

In Strode v. Commonwealth, 52 Pa. 181, Woodward, C. J., delivering the opinion of the court, said:

"The law takes every decedent's estate into custody, and administers it for the benefit of creditors, legatees, devisees and heirs, and delivers the residue that remains after discharging all obligations, to the distributees entitled to receive it. * * * Now this 5 per cent. tax is one of the conditions of administration, and to deny the right of the state to impose it, is to deny the right of the state to regulate the administration of decedent's goods. * * * The act operates on the residue of the estate after paying debts and charges, and, theoretically, that residue is always a balance in money."

And in Jackson v. Myers, 257 Pa. 104, 101 Atl. 341, L. R. A. 1917F, 821, Mr. Justice Mestrezat, citing Strode v. Commonwealth, Finnen's Estate, and Orcutt's Appeal, 97 Pa. 179, took the position outlined in the syllabus that—

"The collateral inheritance tax is not levied upon an inheritance or legacy but upon the estate of the decedent; what passes to the heir or devisee, and to which he acquires title, is the portion of the estate remaining after the payment and satisfaction of the collateral inheritance tax."

The case came before the court upon the construction of an agreement by the guardian of certain minors to sell all the right, title, and interest of the minors in the estate of George W. Jackson, deceased, for the sum of $40,000 in cash, without any deduction whatever, and

it was held that what should be sold under the agreement was the interest of the minors after payment of the collateral inheritance tax. The learned Justice said:

"The failure of the learned court to observe the distinction, clearly pointed out in the authorities above cited, between a lien on the estate of the decedent and on the interest of the defendant's wards in that estate, led it to the erroneous conclusion that the tax was a lien within the meaning of the contract of sale which the defendant was required to discharge. The estate of George W. Jackson, deceased, did not pass to the collateral heirs until the tax was paid. If Jackson's representative delivered the personal estate to the beneficiaries before the payment of the tax, the statute unmistakably fixed him for it. If the heirs took possession of the real estate, the tax being unpaid, it was subject to the statutory lien; but the residue, after payment of the lien, was discharged from the payment of the tax, and their title was only to that part of the estate 'which is left after the tax has been taken off.' In selling their right, title, and interest in and to the estate of the decedent, the defendant's wards could sell only the part of the estate left after the payment of the tax. It was that title which they were required to make good, marketable, and such as would be insured by a reputable trust company. If there were no incumbrances against it, the plaintiffs could not complain. The lien reported by the trust company was against Jackson's estate and not against the part of his estate to which the heirs succeeded."

It appears to be the settled law of Pennsylvania, therefore, that the collateral inheritance tax is payable out of the estate of the decedent, that its amount is based upon the clear value of the estate passing from the decedent to collaterals whether mediately or immediately, and that it is not deductible from the estate of the collateral beneficiary as such, and therefore paid by the collateral legatee or devisee, but that the latter receives only what remains after the estate has been diminished by the tax being paid by the executor or administrator, or after the owner has discharged the liability for the tax in case of a reversionary interest.

Under the decisions, it is deductible either as an administration expense, or as a claim against the estate, or, if the right of the executors to deduct it before payment of the federal tax were doubtful under these items, the deductions allowed under the law as "such other charges against the estate as are allowed by the laws of the jurisdiction under which the estate is being administered" broadly and entirely include it.

Judgment for the plaintiffs for $2,331.56, with interest from November 1, 1917.