APPEAL OF FARMERS LOAN & TRUST CO.,
ADMINISTRATOR, ESTATE OF NATHANIEL WHITMAN.

Docket No. 1399. Submitted March 18, 1925. Decided November 20, 1925.

The taxpayer as administrator made return and paid tax on the transfer of the estate of Nathaniel Whitman in the year 1919 and claims the right to deduct the said tax from its return of income for the estate for the period in which the tax was paid. *Held*, that the New York State transfer tax was a proper deduction from income of an estate and that said tax is not deductible by the beneficiaries thereof.

*Russell Bradford, Esq.*, for the taxpayer.
*E. C. Lake, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income tax for the taxable period beginning January 8, 1919, the date of the death of the decedent, and ended December 31, 1919. The amount of the deficiency is $4,498.86.

The sole question involved in the appeal is whether the New York State transfer tax may be deducted in the determination of the net income of an estate.

### FINDINGS OF FACT.

Nathaniel Whitman died a resident of the State of New York on January 7, 1919, leaving a will in which he appointed one Arthur L. Lasher as sole executor. The said Lasher acted as executor of the estate until on or about February 18, 1919, when the petitioner in this appeal, the Farmers Loan & Trust Co., was appointed as administrator with the will annexed of the estate.

Said Lasher, on July 10, 1919, paid a transfer tax upon the estate to the Comptroller of the State of New York in the amount of $121,120.07. Under date of June 10, 1921, the Surrogate's Court of New York County made final determination of the value of the estate of Nathaniel Whitman, said value being fixed at $2,500,312.45, upon which a transfer tax was assessed in the amount of $127,494.81, which tax was satisfied by the payment above mentioned because of the 5 per cent discount remitted under New York State law for payment within six months of the date of death.

Nathaniel Whitman died seized of real estate in New York valued at $518,200, of which $87,000 in amount was specifically devised and the tax upon which amounted to $6,496.03. The decedent further provided in his will for the conversion by the executors of all the rest and residue of his estate into cash.

Arthur L. Lasher, as executor of the estate of the decedent, made and filed in due course the income-tax return of that estate for the period from the date of the death of the decedent to the end of the taxable year 1919. In making that return he did not claim as a· deduction the amount of inheritance or transfer tax paid to the State of New York. The Commissioner made other adjustments not here material or in question and from his refusal to offset against such adjustments the transfer taxes above set forth and his determination of a deficiency consequent thereon, the taxpayer brings this appeal. The return of the estate was on the cash basis, and the books were so kept.

DECISION.

The deficiency determined by the Commissioner is disallowed.

OPINION.

JAMES: The question involved in this appeal requires the construction of sections 210, 211, 214 (a) (3) and 219 (a) and (b) of the Revenue Act of 1918, and article 10 of the Tax Law of the State of New York, being the article dealing with the subject of taxable transfers.

Sections 210, 211, and 219 of the Revenue Act of 1918 imposed taxes upon individuals, estates and trusts at rates therein named. Section 214 of that Act provides in part as follows:

Sec. 214. (a) That in computing net income there shall be allowed as deductions:

*       *       *       *       *       *       *

(3) Taxes paid or accrued within the taxable year imposed (a) by the authority of the United States, except income, war-profits and excess-profits taxes; or (b) by the authority of any of its possessions, * * * or (c) by the authority of any State or Territory, * * *

Section 219 of that Act provides in part:

Sec. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income received by estates of deceased persons during the period of administration or settlement of the estate;

*       *       *       *       *       *       *

(b) The fiduciary shall be responsible for making the return of income for the estate or trust for which he acts. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, except * * *

It appears from the foregoing that, under the Revenue Act of 1918, a tax is imposed upon the net income of an estate during the period of administration or settlement, in the same manner as upon other taxable persons and with the same definition of gross and net income and the deductions allowable from gross income in ascer-

taining the amount of net taxable income. Inquiry here, therefore, is whether the New York State transfer tax, paid by the estate of the decedent represented in this appeal, may be taken as a deduction in ascertaining the net taxable income of that estate. The question turns upon whether the estate of Nathaniel Whitman was the taxable entity which paid the New York State transfer tax in the year 1919. The solution of this question turns upon the nature of the tax so paid as defined by the statutes of that State as interpreted by the courts of the United States and of the State of New York.

Section 220 of the New York Tax Law provides, so far as is material, as follows:

TAXABLE TRANSFERS. A tax shall be and is hereby imposed upon the transfer of any tangible property within the state and of intangible property, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases, subject to the exemptions and limitations hereinafter prescribed:

1. When the transfer is by will or by the intestate laws of this state of any intangible property, or of tangible property within the state, from any person dying seized or possessed thereof while a resident of the state.

Section 221 (a) provides the rates of tax which are based upon the amount of the legacies, bequest or inheritance of each individual beneficiary. Section 222, so far as is material to this matter, reads as follows:

ACCRUAL AND PAYMENT OF TAX. All taxes imposed by this article shall be due and payable at the time of the transfer, except as herein otherwise provided. Taxes upon the transfer of any estate, property or interest therein limited, conditioned, dependent or determinable upon the happening of any contingency or future event by reason of which the fair market value thereof can not be ascertained at the time of the transfer as herein provided, shall accrue and become due and payable when the persons or corporations beneficially entitled thereto shall come into actual possession or enjoyment thereof. Such tax shall be paid to the state comptroller in a county in which the office of appraiser is salaried, and in other counties, to the county treasurer, and said state comptroller or county treasurer shall give, and every executor, administrator or trustee shall take, duplicate receipts from him of such payment as provided in section two hundred and thirty-six.

Section 224 provides for the method of collection of the tax and the persons responsible for its payment. It reads as follows:

LIEN OF TAX AND COLLECTION BY EXECUTORS, ADMINISTRATORS AND TRUSTEES. Every such tax shall be and remain a lien upon the property transferred until paid and the person to whom the property is so transferred, and the executors, administrators and trustees of every estate so transferred shall be personally liable for such tax until its payment. Every executor, administrator or trustee shall have full power to sell so much of the property of the decedent as will enable him to pay such tax in the same manner as he might be entitled by law to do for the payment of the debts of the testator or intestate. Any such executor, administrator or trustee having in charge or in trust any legacy

or property for distribution subject to such tax shall deduct the tax therefrom and shall pay over the same to the state comptroller or county treasurer, as herein provided. If such legacy or property be not in money, he shall collect the tax thereon upon the appraised value thereof from the person entitled thereto. He shall not deliver or be compelled to deliver any specific legacy or property subject to tax under this article to any person until he shall have collected the tax thereon. If any such legacy shall be charged upon or payable out of real property, the heir or devisee shall deduct such tax therefrom and pay it to the executor, administrator or trustee, and the tax shall remain a lien or charge on such real property until paid; and the payment thereof shall be enforced by the executor, administrator or trustee in the same manner that payment of the legacy might be enforced, or by the district attorney under section two hundred and thirty-five of this chapter. If any such legacy shall be given in money to any such person for a limited period, the executor, administrator or trustee shall retain the tax upon the whole amount, but if it be not in money, he shall make application to the court having jurisdiction of an accounting by him, to make an apportionment, if the case require it, of the sum to be paid into his hands by such legatees, and for such further order relative thereto as the case may require.

Section 225 reads in full as follows:

REFUND OF TAX ERRONEOUSLY PAID. If any debts shall be proven against the estate of a decedent after the payment of any legacy or distributive share thereof, from which any such tax has been deducted or upon which it has been paid by the person entitled to such a legacy or distributive share, and such person is required by order of the surrogate having jurisdiction, on notice to the state comptroller, to refund the amount of such debts or any part thereof, an equitable proportion of the tax shall be repaid to him by the executor, administrator or trustee, if the tax has not been paid to the state comptroller or county treasurer; or if such tax has been paid to such state comptroller or county treasurer, such officer shall refund out of the funds in his hands or custody to the credit of such taxes such equitable proportion of the tax, and credit himself with the same in the account required to be rendered by him under this article. If after the payment of any tax in pursuance of an order fixing such tax, made by the surrogate having jurisdiction, such order be modified or reversed by the surrogate having jurisdiction within two years from and after the date of entry of the order fixing the tax, or be modified or reversed at any time on an appeal taken therefrom within the time allowed by law on due notice to the state comptroller, the state comptroller shall, if such tax was paid in a county in which the office of appraiser is salaried, refund to the executor, administrator, trustee, person or persons by whom such tax was paid, the amount of any moneys paid or deposited on account of such tax in excess of the amount of the tax fixed by the order modified or reversed, out of the funds in his hands or custody to the credit of such taxes, and to credit himself with the same in the account required to be rendered by him under this article, or if paid in a county in which the office of appraiser is not salaried, he shall by warrant direct and allow the county treasurer of the county to refund such amount in the same manner; but no application for such refund shall be made after one year from such reversal or modification, unless an appeal shall be taken therefrom, in which case no such application shall be made after one year from the final determination on such appeal or of an appeal taken therefrom, and the representatives of the estate.

legatees, devisees or distributees entitled to any refund under this section shall not be entitled to any interest upon such refund, and the state comptroller shall deduct from the fees allowed by this article to the county treasurer shall deduct from the fees allowed him upon such overpayment. Where it shall be proved to the satisfaction of the surrogate that deductions for debts were allowed upon the appraisal, since proved to have been erroneously allowed, it shall be lawful for such surrogate to enter an order assessing the tax upon the amount wrongfully or erroneously deducted. This section, as amended, shall apply to appeals and proceedings now pending and taxes heretofore paid in relation to which the period of one year from such reversal or modification has not expired when this section, as amended, takes effect.

. Section 236 also contains significant provisions with respect to the duty for the payment of the tax and reads as follows:

RECEIPTS FROM COUNTY TREASURER OR COMPTROLLER. One of the duplicate receipts issued for the payment of any tax under this article, as provided by section two hundred and twenty-two, shall be countersigned by the state treasurer if the same was issued by the state comptroller, and by the state comptroller if issued by any county treasurer. The officer so countersigning the same shall charge the officer receiving the tax with the amount thereof and affix the seal of his office to the same and return to the proper person; but no executor, administrator or trustee shall be entitled to a final accounting of an estate in settlement of which a tax is due under the provisions of this article unless he shall produce a receipt so sealed and countersigned, or a certified copy thereof. Any person shall, upon the payment of fifty cents to the officer issuing such receipt, be entitled to a duplicate thereof, to be signed, sealed and countersigned in the same manner as the original. * * *

Section 243, entitled " Definitions," contains a significant definition of the word " transfer," in the following language:

* * * The word "transfer," as used in this article, shall be taken to include the passing of property or any interest therein in the possession or enjoyment, present or future, by inheritance, descent, devise, bequest, grant, deed, bargain, sale or gift, in the manner herein prescribed. * * *

At the outset it must be understood that the deductions permitted by section 214 (a) (3) of the Revenue Act of 1918 for taxes imposed by the authority of any State does not purport to permit the deduction of any taxes except those which are paid because they are obligations of the taxpayer. The section provides that "taxes * * * imposed * * *" may be deducted. To be deductible from income, therefore, the tax here in question must be imposed upon the estate or its personal representative. It is not enough that the personal representative may be made the conduit through which, or through whom, the tax passes to the State. Since the estate is the Federal income tax taxpayer, it must, if it may lawfully claim this deduction, also be the State transfer tax taxpayer.

The question here at issue has been before the Circuit Court of Appeals of the Second Circuit in the case of *Keith* v. *Johnson*,

3 Fed. (2d) 361, and before the Court of Appeals of the State of New York in *Home Trust Co.* v. *Law*, 236 N. Y. 607; 142 N. E. 303, affirming a decision of the Appellate Division reported in 204 App. Div. 590; 198 N. Y. S. 710.

In the case of *Keith* v. *Johnson*, the issue was identical with that in this appeal. The court at the beginning of the opinion quotes section 224 of the Tax Law as follows:

The tax shall be "a lien upon the property transferred * * * and the executors * * * of every estate so transferred shall be personally liable for such tax until its payment."

Referring to section 224, set out in full above, for the portion quoted, we find that the first sentence of that section reads in full as follows:

*Every such tax* shall be *and remain* a lien upon the property transferred *until paid and the person to whom the property is so transferred,* and the executors, *administrators and trustees* of every estate so transferred shall be personally liable for such tax until its payment. (Italics indicate omitted portions, and are ours.)

Reasoning from the section as quoted by it, the court holds that the tax is imposed upon the executor, which is true, but it is also true that in the same sense the tax is imposed both upon the property transferred and the person to whom it is transferred. It would appear that there is nothing in section 224 which is determinative of the question here at issue. Throughout the provisions of sections 221, 224, 225, and 236, dealing with the collection of the tax, there is no intimation as to the particular entity upon which the tax *per se* is imposed. In fact, section 220 makes it perfectly clear that the tax is imposed upon an event, namely, "the transfer of any tangible property within the state and of any intangible property, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases, * * * *"

The court, also, in *Keith* v. *Johnson*, relies upon the above case of *Home Trust Co.* v. *Law*, to which reference in detail will be made later in this opinion.

The Commissioner contended in *Keith* v. *Johnson*, and in the instant appeal contends, that the tax is a proper and allowable deduction from the income of the devisee or heirs-at-law when paid, notwithstanding the decision of *Prentiss* v. *Eisner*, 267 Fed. 16.

Finally, it is apparent that the court had considerable difficulty in deciding that a New York State transfer tax imposed upon the tranfer of real estate was a tax upon the estate, since, strictly speaking, real property left under a specific devise never comes into the hands of the executors or administrators but passes direct to the heirs, upon whom is placed the direct burden under section 224 of

paying the tax upon the real property to the executor, who is charged with the duty of paying the tax in the first instance to the State. So serious did the court apparently consider this question that it concluded the opinion with the words, "We express no opinion as to the result in the cases of realty, where the executor is not the successor, or even in the case of specific legacies." It must be apparent that if the New York State transfer tax is deductible by any interest, either the estate through the executor or the legatees or heirs, it must be deductible as an entirety and not in parcels depending on the particular manner of the devolution of the property. Any other rule would be so impossible of administration as to indicate clearly that there could have been no congressional intent to provide so complicated a method of deducting it. Consider, for instance, a legatee receiving real estate, a specific bequest, and a share in the residuary estate, which latter comprises both real and personal property. The New York transfer tax, like most inheritance taxes, is graduated both by the degree of relationship of the legatee or heir and by the amount of property received. The tax is computed on the aggregate amount of the transfer. In a case such as that supposed, if the intimation of the court should lead to a separation, the person attempting to compute the proper deduction by the estate and by the legatee would be forced to determine how much of the transfer tax imposed in bulk was imposed (1) upon a specific legacy, (2) upon the real property passing direct, (3) upon the real property and personal property comprising the legatee's share of the residuary estate, and, to make the matter more complicated, we may assume that a satisfactory division among all the sharers in the residuary estate was arrived at and they took undivided interests in the real property included therein.

The Court of Appeals wrote no opinion in *Home Trust Co.* v. *Law.* The Appellate Division of the Supreme Court, however, wrote a carefully considered opinion, in which it held that under the New York State income tax law, imposed under provisions of law almost identical with those of the Federal law, the transfer tax was properly deductible from the income of the estate and not from the income of the individual legatees and devisees or heirs. After discussing a number of New York cases, to which reference is made below, the court said:

> The transfer tax payment is made by the executor from the funds of the estate. * * * The tax is measurable, not by the funds received by a legatee, but by the funds the executor receives. As the burden of paying the income tax, as well as the burden of paying the transfer tax, is cast upon the executor, and as the taxable income of the estate is under the terms of the Tax Law measurable by gross income received, less taxes paid, it would seem clear that the person paying the income tax, namely, the executor, is entitled to deduct the very transfer tax which he himself pays.

We believe the foregoing states succinctly the sound basis for the determination in this appeal. It is not that the tax is made a burden upon the executor or the estate as such, or the legatees, devisees, or heirs, as such, but that primarily the State looks to the executor and to the estate for the payment of the tax. Being a tax measured, unlike the Federal estate tax, by the amount transferred to each individual beneficiary, the New York transfer tax has quite properly provided the machinery wherby each individual beneficiary receives his share diminished by the tax upon that share. But this does not necessarily mean that the tax is either paid by the beneficiary or imposed upon him. He receives his legacy diminished by a tax subtracted therefrom before his right attaches, although measured by the legacy itself. *In re Swift's Estate,* 137 N. Y. 77; 32 N. E. 1096; *In re Penfold's Estate,* 216 N. Y. 163; 110 N. E. 497; *In re Merriam's Estate,* 141 N. Y. 479; 36 N. E. 505, affirmed in the Supreme Court of the United States under the title of *United States* v. *Perkins,* 163 U. S. 625.

The last case above mentioned involved a legacy left by Merriam to the United States and included both real and personal property. It is much relied upon by the taxpayer in this appeal, as indicating that the tax is upon the estate, both because of the language in the decision of the New York Court of Appeals and because of the language of the United States Supreme Court and upon what it assumes to be a corollary that to hold that the tax is one imposed upon the devisee would involve a constitutional question by reason of the fact that the property of the United States is exempt from state taxation. Whether this is so as applied to legacies left to the United States may well be doubted, since the United States does not take in its capacity as a Government but in its capacity as a corporation.

In *Merriam's* case, the Court of Appeals said:

For the purpose of receiving legacies, and for many other purposes, the United States is to be regarded as a body politic and corporate.

In *South Carolina* v. *United States,* 199 U. S. 437, the court said:

Further, it may be noticed that the tax is not imposed on any property belonging to the State, but is a charge on a business before any profits are realized therefrom. In this it is not unlike the taxes sustained in *United States* v. *Perkins,* 163 U. S. 625.

This decision, while not controlling the question before us, indicates that the thought has been that:

The exemption of state agencies and instrumentalities from National taxation is limited to those which are of a strictly governmental character, and does not extend to those which are used by the State in the carrying on of an ordinary private business. (199 U. S. 461.)

In *United States* v. *Perkins* the court said:

The so-called inheritance tax of the State of New York is in reality a limita-tion upon the power of a testator to bequeath his property to whom he pleases; a declaration that, in the exercise of that power, he shall contribute a certain percentage to the public use; in other words, that the right to dispose of his property by will shall remain, but subject to a condition that the State has a right to impose. * * * Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the State that it becomes the property of the legatee. * * *

We think that it follows from this that the act in question is not open to the objection that it is an attempt to tax the property of the United States, since the tax is imposed upon the legacy before it reaches the hands of the government. The legacy becomes the property of the United States only after it has suffered a diminution of the amount of the tax, and it is only upon this condition that the legislature assents to a bequest of it.

We come now to consider some of the cases cited by the Commis-sioner which seem at first glance to indicate a conflict in the New York decisions as to the nature of the New York tax. *In re Hoff-man's Estate*, 143 N. Y. 327; 38 N. E. 311, involved the method of computing the statutory exemption of $10,000—that is, whether the said exemption applied to the individual shares or to the estate as a whole. In this case there was a life estate created for the mother of the testatrix, a further life estate to her daughter, and the re-mainder to her issue under certain contingencies. The court held that there was one exemption of $10,000, and used language which seemed to indicate that the tax was upon the recipient, particularly the following language: " There are some changes of phraseology in the more important sections, but I think it remains true that the tax is one upon the right of succession, *levied upon successors in respect to the shares to which they succeed, and not upon the dece-dent's estate as such*." (Italics ours.) It is manifest that the above italicized portion of the quotation of the decision is dictum wholly unnecessary to the decision in the case and quite without reflection upon the result arrived at. If the court had said in the place of the italicized portion, " measured by the shares passing to the benefi-ciaries," the sense would be substantially the same in so far as it is necessary to a decision, and the case would be in agreement with the major line of New York authority.

*In re Westurn's Estate*, 152 N. Y. 93; 46 N. E. 315, is a case involving the method of computing the taxable estate. Since the New York transfer tax is measured by the shares passing; it neces-sarily follows that the law does not contain, as does the Federal estate tax law, provision for the computation of a gross estate from which the debts of the decedent and the costs of administration are

deductible. In *Westurn's Estate*, an expensive contest over a will resulted in unusually large costs of administration, and the question involved was whether, in computing the value of the shares passing, these expenses of administration were deductible. The real decision in the case is contained in the following language:

> The real interest passing is what remains after payment of debts and other charges. It is plainly inferable from section 225 of the act that the debts of the decedent are to be deducted in arriving at the valuation of the property and in fixing the tax. That section authorizes a proportionate amount of a tax to be refunded in case debts against the estate shall be proven after the tax shall have been paid.

But the court also said:

> The principle that the tax is a succession tax imposed as a burden *on each person claiming succession, measured by the value of his interest, and collectible out of his interest only, was reaffirmed in the case of In re Hoffman's Estate.* * * * (Italics ours.)

The language was also quite unnecessary to the decision of the case, and was obviously used by the court in the most general sense.

*In re Gihon's Estate*, 169 N. Y. 443; 62 N. E. 561, involved the propriety of the deduction of costs of temporary administration. The court held that the deduction was proper before computing the value of the taxable interests transferred, and again the court used language which, taken out of its setting, seems to indicate that the tax is imposed upon the legatee. The case also involved the question whether the Federal inheritance tax of 1898 was deductible in determining the value of the taxable transfer under the New York law. In holding that this tax could not be deducted, the court said:

> In our judgment, the vital error of this argument lies in the assumption that the "taxes are primarily payable out of the estate." The federal tax is exactly of the same nature as the state tax,—a tax not on property, but on succession; that is to say, a tax on the legatee for the privilege of succeeding to property. * * * The federal tax is necessarily of this character; for a direct tax, unless apportioned according to population, would be repugnant to the constitution of the United States. Under that statute, also, it is the amount of the legacy, not of the estate, that determines the rate of taxation. Therefore, though the administrator or executor is required to pay the tax, *he pays it out of the legacy for the legatee, not on account of the estate.* (Italics ours.)

But the same result would have been arrived at in the foregoing case had the court contented itself with saying that both taxes were imposed simultaneously and both upon the shares in the estate actually transferred undiminished on account of any tax upon the transfer, upon the succession or upon the inheritance, or by whatever name it happened to be described.

In *New York Trust Co.* v. *Eisner*, 256 U. S. 345, the same confusion of thought appears where the court says:

If the tax attaches to the estate before distribution—if it is a tax on the right to transmit, or on the transmission at its beginning, obviously it attaches to the whole estate except so far as the statute sets a limit. " Charges against the estate " as pointed out by the Court below, are only charges that affect the estate as a whole, and therefore do not include taxes on the right of individual beneficiaries. This reasoning excludes not only the New York succession tax but those paid to other States, which can stand no better than that paid in New York. What amount New York may take as the basis of taxation and questions of priority between the United States and the State are not open in this case.

Again, the same conclusion would have been arrived at by holding that the taxes attached simultaneously on account of the transfer or succession and were not to be computed with reference to one another.

*Knowlton* v. *Moore*, 178 U. S. 41, involving the constitutionality of the Federal inheritance tax of 1898 as imposed by the War Revenue Act of that year, is a most instructive decision as bearing upon the nature of inheritance, succession, transfer, and estate taxes. While the actual decision of the court in that case is not of great importance in this appeal, some of the language is helpful and significant as to the general nature of inheritance, succession, transfer, and estate taxes. Thus the court says (pp. 55, 56):

Thus, looking over the whole field, and considering death duties in the order in which we have reviewed them, that is, in the Roman and ancient law, in that of modern France, Germany and other continental countries, in England and those of her colonies where such laws have been enacted, in the legislation of the United States and the several States of the Union, the following appears: Although different modes of assessing such duties prevail, and although they have different accidental names, such as probate duties, stamp duties, taxes on the transaction, or the act of passing of an estate or a succession, legacy taxes, estate taxes or privilege taxes, nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, of the transmission from the dead to the living, on which such taxes are more immediately rested.

And on page 57:

Confusion of thought may arise unless it be always remembered that, fundamentally considered, it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties. The qualification of such taxes as privilege taxes, or describing them as levied on a privilege, may also produce misconception, unless the import of these words be accurately understood. They have been used where the power of a state government to levy a particular form of inheritance or legacy tax has in some instances been assailed because of a constitutional limitation on the taxing power. Under these circumstances, the question has arisen whether, because of the power of the State to regulate the transmission of property by death, there did not therefore exist a less trammeled right to tax inherit-

ances and legacies than obtained as to other subject-matters of taxation, and, upon the affirmative view, being adopted, a tax upon inheritances or legacies for this reason has been spoken of as privilege taxation, or a tax on privileges. The conception, then, as to the privilege, whilst conceding fully that the occasion of the transmission or receipt of property by death is a usual subject of the taxing power, yet maintains that a wider discretion or privilege is vested in the States, because of the right to regulate. Courts which maintain this view have therefore treated death duties as disenthralled from limitations which would otherwise apply, if the privilege of regulation did not exist. The authorities which maintain this doctrine have been already referred to in the citation which we have made from *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 288. An illustration is found in *United States* v. *Perkins*, 163 U. S. 625, where the right of the State of New York to levy a tax on a legacy bequeathed to the Government of the United States was in part rested on the privilege enjoyed by the State of New York to regulate successions. Some state courts, on the other hand, have held that, despite the power of regulation, no greater privilege of taxation exists as to inheritance and legacy taxes than as to other property. *Cope's Appeal*, 191 Penn. St. 1; *State* v. *Ferris*, 53 Ohio St. 314; *State* v. *Gorman*, 40 Minn. 232; *Curry* v. *Spencer*, 61 N. H. 624. In *State* v. *Switzler*, 143 Missouri, 287, the power of the legislature of Missouri to levy a uniform tax upon the succession of estates was conceded, though such tax was declared not to be a tax upon property in the ordinary sense. The court nevertheless held that the particular tax in question, which was progressive in rate, was invalid, because it violated a provision of the state constitution; the decision, in effect, being that because the legislature had the power to regulate successions, it was not thereby justified in levying a tax which was not sanctioned by the state constitution.

All courts and all governments, however, as we have already shown, conceive that the transmission of property occasioned by death, although differing from the tax on property as such, is, nevertheless, a usual subject of taxation. Of course, in considering the power of Congress to impose death duties, we eliminate all thought of a greater privilege to do so than exists as to any other form of taxation, as the right to regulate successions is vested in the States and not in Congress.

We conclude, therefore, that the New York State transfer tax at least is a tax which is primarily imposed upon the transfer of an estate, the taxable portion and the rate of tax being measured by the value of the several transfers made, the executor or administrator being primarily the medium for the payment of the tax, and the tax being in the first instance payable out of the taxable shares in the estate before they are transferred. The tax is, we believe, deductible from income of the estate and not from that of the individual beneficiaries. In arriving at this conclusion, we confess some difficulty in determining that the tax is imposed upon any entity whatever in a strict sense, since it is imposed really upon the happening of an event and is a true excise tax rather than a tax strictly either *in personam* or *in rem*. But excise taxes, for instance stamp taxes paid upon deeds or other instruments by an executor, would clearly be included in the category of taxes which might be deducted in determining the net income of an estate.

The real confusion, we believe, in the New York cases, and in some of the others to which reference has been made, arises from the difficulty of finding precise language to define the nature of a tax when the exact issue before the court does not require a precise definition. In the decisions themselves we do not find conflict. We find it only in the language used by the courts. Apparently, there is a confusion under the New York law between the imposition of the tax and its incidence, and this confusion is notably found in the brief filed by the Commissioner in this appeal. Thus the Commissioner says:

These results necessarily follow from the provisions of the New York Inheritance Tax Act. Each legatee is personally liable for the tax on his legacy. The executor deducts the amount of the tax, not from the estate, but from the legatee's share, and if the legacy or distributive share is not in money the executor is required to collect the tax thereon from the person entitled thereto and he cannot be compelled to deliver the property until the legatee has paid the tax thereon. In the event that there are several succeeding estates in the same property the Court is empowered to apportion the tax amongst the several tenants and to determine the amount to be paid into the executor's hands by each of them. (Section 224.) Manifestly these provisions are intended to impose the burden of this tax upon such legacy. They are entirely inconsistent with any idea that the burden of the tax is to fall upon the "estate." It is true that the estate must in the first instance pay the tax, but the incidence of the tax is not determined by its payment where the person paying is entitled to reimbursement. The incidence of the tax is determined by the ultimate liability. Under the New York Act the legatee is ultimately liable for the tax. He must pay it before he can receive his legacy. In the event that the estate proves insufficient to pay debts and the legatee is compelled to refund a part of his legacy he is entitled to recover from the tax commission a pro rata part of the tax paid. (Section 226.) Manifestly if the ultimate liability is not upon the legacy the recovery of the overpaid tax would be by the executor as the representative of the estate, and not by the legatee.

But if this reasoning is sound and the incidence of the tax is to be the determining factor as to the entity by which it may be deducted from income, then the Commissioner's case falls entirely in respect of the entity which may properly deduct the Federal estate tax from an income-tax return. Under the New York law the Federal estate tax has been held to be a charge upon the residuary estate, *In re Hamlin*, 226 N. Y. 407; 124 N. E. 4; and the residuary legatees receive their shares necessarily diminished on account of the imposition of the tax. If the incidence of the tax is a measure of its deductibility, then the decision in *United States* v. *Woodward*, 256 U. S. 632, was erroneous. The argument proves too much and really has no bearing upon the precise question here under consideration.

These donees do not pay the taxes any more than they pay the funeral expenses, the lawyers, the executors and the testator's debts. *Y. M. C. A.* v. *Davis*, 264 U. S. 47, 51.

We are of the opinion that the taxpayer in this appeal is entitled to a deduction on account of the transfer tax paid to the State of New York in the year 1919, and the deficiency determined by the Commissioner herein must be disallowed.