FLORENCE M. ELY, as Executrix of WALTER L. ELY, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31432.)

Court of Claims, August 14, 1953.

*Gerald S. Hewitt* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Harold S. Coyne* of counsel), for defendant.

RYAN, J. Claimant is the legal representative of Walter L. Ely who at the time of his suicide was an inmate of Willard State Hospital. This suit is brought to recover damages upon the allegation that State employees were negligent in their supervision of the State's ward. An application is made for the examination before trial of the Superintendent of Willard State Hospital and of hospital attendants. The Attorney-General does not oppose such an examination. But the claimant asks that there be included in the order a direction that claimant be permitted to examine " the room and surroundings wherein the said Walter L. Ely was confined at the time of his death ". This

the Attorney-General opposes on the ground that it comes " under the head of discovery and inspection " which he contends " is not allowable under the Court of Claims Act ".

Some time ago it was held that although section 324 of the Civil Practice Act recites that a court of record may grant an order for discovery and inspection such practice was not available to litigants in the Court of Claims. (*Dunbar & Sullivan Dredging Co.* v. *State of New York,* 174 Misc. 743.) In 1947, the Judicial Council recommended, and the Legislature adopted, a bill to add to the Court of Claims Act a new section, to be section 17-a, which by its terms, provided for discovery and inspection. (Senate Intro. 197, Print 528, Jan. 13, 1947.) This bill was vetoed March 27, 1947.

The rule in *Dunbar & Sullivan* was recently recognized in *Wager* v. *State of New York* (204 Misc. 598), but the relief sought on that motion was distinguished and held to be authorized by section 296 of the Civil Practice Act. The rule was not followed in another recent case wherein discovery was directed. (*Maloney* v. *State of New York,* 204 Misc. 263, revd. 282 App. Div. 850.) A re-evaluation of the *Dunbar & Sullivan* holding seems to be indicated.

Discovery and inspection, under article 32 of the Civil Practice Act, like testimony by deposition under article 29 of the Civil Practice Act, is one of the modern practice aids in preparation for trial fostered as being useful both to litigants and to the courts in the clarification of issues and the expedition of trials. When innovated these measures were interpreted conservatively. They are now construed liberally. Prior to the enactment of chapter 860 of the Laws of 1939, which added subdivision 2 of section 17 to the Court of Claims Act it was held that there being no express statutory authority therefor examinations before trial of officers and employees of the State under sections 288 and 289 of the Civil Practice Act must be denied. (*Langdon* v. *State of New York* 160 Misc. 946; *Friedman* v. *State of New York,* 161 Misc. 358, affd. 250 App. Div. 809.) But the rationale of those decisions was found in the cases of *Bush Terminal Co.* v. *City of New York* (259 N. Y. 509) and *Davidson* v. *City of New York* (175 App. Div. 969, affd. 221 N. Y. 487), which held that there could be no examination before trial of a municipal corporation. And, relying on those decisions Presiding Judge BARRETT said in the *Langdon* case that he could see no distinction between them and the suit in which the State was defendant. In the *Bush Terminal* case the Court of Appeals relied on the authority of the *Davidson* case. The *Davidson* decision in turn,

rested on *Uvalde Asphalt Paving Co.* v. *City of New York* (149 App. Div. 491), which had already been distinguished in *Hannon* v. *City of New York* (226 App. Div. 757), at the time when the *Bush Terminal* case was considered by the Appellate Division, Second Department (1931), (234 App. Div. 721). Re-examining the *Uvalde* opinion it appears that although there was an extensive discourse on the differences between municipal corporations and business corporations and of the duties and powers of the officers of the one and of the other the decision really turned on the point that the plaintiff in that case had failed to show that it could not get the information sought on the examination before trial by other means and on the supplementary consideration that municipal employees should not have their time squandered by unnecessary appearances before an examining officer with respect to litigations against the municipality. The brief *Per Curiam* statements by which examinations of the City of New York were finally denied in the *Bush Terminal* and *Davidson* cases shed little light on the reasoning by which such ultimate determination was reached. Viewed today the *Uvalde* argument seems a fragile prop to support them.

But, in any event, the Legislature moved to remedy the situation and by chapter 921 of the Laws of 1941 inserted section 292-a in article 29 of the Civil Practice Act and gave authority, in the court's discretion, to order the examination of officers and employees of a municipal corporation. By chapter 830 of the Laws of 1942 this section was amended to read "public corporation" instead of "municipal corporation" and its provisions were otherwise broadened. With those enactments the foundation of the *Langdon* and *Friedman* decisions was swept away. In the meantime came the Fourth Department decision in *Ehde* v. *State of New York* (260 App. Div. 511, 513), which pointed out that "the prosecution of a claim before the Court of Claims is in effect the same as the prosecution of an action in the Supreme Court * * * The practice * * * is the same * * * otherwise provided". Now it is true that in the *Ehde* case the court was considering the language of subdivision 9 of section 9 of the Court of Claims Act as enacted by chapter 860 of the Laws of 1939, the same act which added subdivision 2 of section 17 to Court of Claims practice. But similar language in the predecessor statute, section 265 of the Code of Civil Procedure which in 1920 became section 14 of the Court of Claims Act had been held to give a litigant in this jurisdiction the same rights he would have in an action in the Supreme Court as long ago as *Smith* v. *State of New York*

(214 N. Y. 140). In effect, the Fourth Department, in the *Ehde* case, was giving a new and more liberal look at Court of Claims practice, evidencing a trend which began with the enactment of the first general waiver of tort immunity, subdivision (a) of section 12 of the Court of Claims Act, added by chapter 467 of the Laws of 1929 and which ultimately, January 1, 1950, placed this court within the embrace of the State Constitution. In line with this broader view of the jurisdiction and powers of the Court of Claims and consonant with present day interpretation of practice provisions we do not doubt that if the *Langdon* and *Friedman* applications were presented today *de novo,* and assuming that subdivision 2 of section 17 of the Court of Claims Act had never been enacted, relief would be granted in reliance on sections 288 and 289 of the Civil Practice Act and that such action would be upheld. As a matter of fact the provisions of these two sections of the Civil Practice Act and other pertinent provisions of article 29 govern the procedure in the many examinations before trial directed yearly by this court. There were 105 such orders in 1952. Thus we see that the basis for refusing an examination of State employees having been removed, the old decisions do not stand.

Similarly, discovery and inspection was for a long time denied to a plaintiff suing a municipal corporation. (*Cooper* v. *Village of Brockport,* 246 App. Div. 571; *Berryman* v. *Board of Educ. of City of Buffalo,* 257 App. Div. 915; *De Benedittis* v. *Board of Educ. of City of New York,* 183 Misc. 700.) But by chapter 727 of the Laws of 1945, effective September 1, 1945, section 324 of the Civil Practice Act was amended so as to include " public and municipal " corporations within its scope and this remedy is now available in suits against such entities. In view of the broad waiver of immunity from liability and action set forth in section 8 of the Court of Claims Act and the declaration therein that the State consents to have its liability " determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations " and in view of the provision of subdivision 9 of section 9 of the Court of Claims Act as interpreted and upheld in the *Ehde* case (*supra*) is it not logical to say that the provisions of section 324 of the Civil Practice Act are available to litigants in this court? We can find nothing in the Court of Claims Act which conflicts with or contravenes the effect of section 324 of the Civil Practice Act. In brief, the Legislature has not *otherwise* provided. It is true that the Legislature has provided in the Court of Claims Act for an examination before

trial, upon the application of a claimant, of an officer or employee of the State. (Court of Claims Act, § 17, subd. 2.) But, as we have demonstrated, the foundation for the denial of such an examination has been removed, express statutory authority, desired in the *Langdon* and *Friedman* cases, is no longer needed and the relief is now available to a claimant in this court without the aid of said section of the Court of Claims Act. Hence, that statute must now be regarded as supplementary. To supplement is not to *otherwise* provide. That term implies negation. Until the Legislature states otherwise, we believe that a claimant in this court is entitled to avail himself of the provision of section 324 of the Civil Practice Act. If the argument may be advanced that the enactment in 1947 of a proposed section 17-a of the Court of Claims Act disclosed a legislative contemplation that such an addition to the Court of Claims Act was necessary, the reply may be made that the unexplained veto of the measure may well have been based upon a legal opinion that it was superfluous.

Our conclusions bring us into apparent conflict with the statement in *Di Laura* v. *State of New York* (275 App. Div. 639), which reads as follows: " While section 296 of the Civil Practice Act may be held to implement section 17 of the Court of Claims Act * * * there is no statutory authority by which the claimant may avail himself of the provisions of section 324 of the Civil Practice Act."

But, as recited in the next succeeding sentences of the *Per Curiam* opinion, what was actually decided in the *Di Laura* case was that the claimants were not entitled " to ascertain in advance of trial, the results of the State's investigation through its experts made in preparation for trial." The record in the *Di Laura* case disclosed an affidavit by a deputy attorney-general that he had directed that the quarry borings be made. The argument was advanced and upheld that the order appealed from infringed upon the area of the work product of the lawyer and that the information was privileged. (*Hickman* v. *Taylor*, 329 U. S. 495; *Bloodgood* v. *Lynch*, 293 N. Y. 308.)

To reach the conclusion that the State of New York has made itself subject to all of the pertinent practice provisions available to litigants in the Supreme Court, including a direction for discovery and inspection against it, it is not necessary to regard the State in the light of a public or municipal corporation. It has generally been regarded otherwise. (*Armstrong* v. *State Bank of Mayville*, 177 App. Div. 265, affd. 227 N. Y. 563.) And the State is not included in various statutory definitions. (Gen-

eral Corporation Law, § 3 subd. 1. Conservation Law, § 430, subd. 7. See, also, N. Y. Const., art. XVIII, § 2.) Yet municipal corporations are governmental subdivisions of the State (*Union Free School Dist. No. 3* v. *Town of Rye,* 280 N. Y. 469, 475). The United States Government was long ago termed a corporation. (*Matter of Merriam,* 141 N. Y. 479, affd. as *United States* v. *Perkins,* 163 U. S. 625, and quoting Chief Justice MARSHALL in *United States* v. *Maurice,* 26 Fed. Cas. No. 15,747. See, also, 18 C. J. S., Corporations, § 18.) Judge BARRETT's denial of relief in the *Langdon* case was not for the reason that the State was in fact a municipal corporation but because he found the State's position to be analogous to that of one.

There is, moreover, another reason why the relief herein sought should be afforded. This claimant's intestate was a ward of the State and the records of that patient are available to her upon order of this court. (*Buchalter* v. *State of New York,* 172 Misc. 420.) An examination and inspection of the room where the intestate was confined and permission to photograph it may properly be granted. (*Manzi* v. *State of New York,* 23 N. Y. S. 2d 21.) Such a direction violates no privilege.

The order to be entered herein may provide accordingly.