## VAN DYKE v. WILKINSON.

District Court, E. D. Wisconsin. March 5, 1928.

**1. Taxation ⬤➔856—Inheritance tax, under Wisconsin statutes, is tax on right to receive property.**

Inheritance tax, under statutes of Wisconsin, is a tax on right to receive property.

**2. Internal revenue ⬤➔7(20)—Legatee held entitled, in computing income, to deduct his portion of inheritance tax paid state by executor on outright gift and gift of income during life (Revenue Act 1924, § 214(a), 26 USCA § 955(a); St. Wis. 1927, § 72.05).**

Legatee, in computing net income and filing personal income tax return, held entitled to deduction, under Revenue Act 1924, § 214(a), 26 USCA § 955(a), Comp. St. § 6336⅙g(a), of his portion of inheritance tax paid to state by executor both on outright gift and on gift of income during life, such inheritance tax being, under law of Wisconsin, tax on right to receive property rather than tax on estate of deceased as an entirety based on right to transmit, notwithstanding St. Wis. 1927, § 72.05, provides that every such tax shall be and remain a lien on property transferred until paid, and that legatees, administrators, etc., shall be personally liable for tax until payment.

**3. Internal revenue ⬤➔7(20)—When state inheritance tax is tax on right to receive property, legatee, in computing income, may deduct proportionate amount of inheritance tax paid, regardless of difficulty of measuring same (Revenue Act 1924, § 214(a), 26 USCA § 955(a).**

Where, under state law, state inheritance tax is tax on right to receive property, legatee has right, under Revenue Act 1924, § 214 (a), 26 USCA § 955(a), Comp. St. § 6336⅙g(a), in computing net income, for income tax purposes, to deduct proportionate amount of inheritance tax paid by executor, regardless of difficulty of measuring or apportioning taxes.

At Law. Action by Douglas Van Dyke against A. H. Wilkinson to recover federal income taxes paid for the year 1924. Plaintiff demurred to defendant's answer. Demurrer sustained, with privilege to defendant of filing amended answer within 20 days.

Van Dyke & Hauxhurst, of Milwaukee, Wis., for plaintiff.

L. H. Bancroft, U. S. Atty., of Milwaukee, Wis., for defendant.

GEIGER, District Judge. The plaintiff brings this action to recover federal income taxes paid for the year 1924; the complaint sets forth in detail the facts out of which the claim arises, and the defendant has framed an answer, to which the plaintiff has demurred, and thereby, as the parties agree, a single question of law is presented upon the facts detailed in the complaint, which, upon the demurrer, as a matter of relation, are before the court without controversy.

George H. Lawrence, a resident of Milwaukee, died on October 22, 1923. His will, duly admitted to probate, provided for the payment of certain legacies, and the remainder was devised and bequeathed in trust, to be held during the lives of certain persons and 21 years thereafter, and to pay the income from the estate to three persons, of whom the plaintiff is one; that, upon the death of any one of the three, such decedent's share of the income was directed to be paid to the survivors under the trust provision. Upon the termination of the trust the principal of the estate was to be distributed to certain institutions specified.

The will provided: "I direct that my executor shall pay out of the principal of my estate all inheritance taxes, both state and federal, that may be assessed upon my estate or upon the interests of the beneficiaries therein."

In the year 1924 the executor paid to the state of Wisconsin a sum sufficient to cover any and all inheritance taxes that might be due to the state of Wisconsin, which amount was afterwards determined to be $116,384.02.

The plaintiff, having filed his personal income tax return for the year 1924, paid the taxes due thereon (to the government, then filed an amended return, in which he sought to take deduction, under section 214(a) of the Revenue Act of 1924 (26 USCA § 955(a); Comp. St. § 6336⅙g(a), for the sum of $39,435.64, which was claimed to be his portion of the said inheritance tax paid by the executor.

The plaintiff filed his claim for a refund of this amount, which the Commissioner of Internal Revenue denied, and thereupon the plaintiff brought this suit. The case is concisely stated by the plaintiff:

"That the tax was a proper deduction by some one is not denied, nor is it denied that it was a proper deduction either by the plaintiff in his income tax return for 1924, as claimed by him, or by the executor of the estate in making the income tax return for the estate for 1924. The precise question here presented is which of these two was entitled to take the deduction.

"The answer to this question, obviously, is that the tax was deductible by the person on whom it was imposed, and by whom it was in fact paid, whether paid directly or indirectly. In other words, if the tax was imposed on the estate of the deceased as an entirety, based on decedent's right to transmit, and paid out of decedent's gross estate, then it would follow that the deduction therefor should be taken by the estate. But, on

the other hand, if the tax was in fact imposed on each legatee and devisee separately, based on his right to receive, and was paid by each legatee or devisee, or was paid for his benefit and account by the executor out of the residue or principal of the estate, pursuant to the direction of testator's will, then the tax is properly deductible by the recipient of the legacy or devise so taxed, and this is the plaintiff's contention."

Moreover, the parties do not disagree in this: That the federal income tax law, while permitting a deduction for state inheritance taxes paid, does not designate in words the person who may take it. Obviously, the legislative intent must have been that such deduction—as a matter of justice—should be allowed to the one who really bears the burden of the state tax. In other words, and this is the plaintiff's contention, the deduction is *intended* to be awarded with reference, not to the nominal, but to the *real* incidence of the state tax. Much of the discussion in the case is directed to the effect of decisions of the United States Supreme Court, particularly in Keith v. Johnson, 271 U. S. 1, 46 S. Ct. 415, 70 L. Ed. 795, 44 A. L. R. 1432, and U. S. v. Mitchell, 271 U. S. 9, 46 S. Ct. 476, 70 L. Ed. 799. The former of these cases deals with a deduction claimed by a New York, the latter with one claimed by a Texas, *executor*, in making income tax returns for their estates, for taxes paid under the inheritance tax laws of these states respectively.

And while the defendant collector herein seems content to rest his case upon an oft-repeated insistence that these cases not only determine, but foreclose the question in this case, the plaintiff claims, not only that they accord with his contention, but that he expressly invokes them as prescribing the only *test of deductibility* to be applied, viz.: *"The meaning and proper application of the state"* tax law according to the *"decisions of the state courts."* The collector further makes the broad claim that there are no decisions of the state courts of Wisconsin enabling the application of the test prescribed, wherefore he concludes that the Wisconsin law is open to interpretation by the federal courts, and, obediently to these decisions, must give to the Wisconsin law the same interpretation which the Supreme Court (on the strength of New York decisions) gave to the New York and the Texas law with respect to this fundamental matter.

It is assumed that, if the test be stated in the terms above quoted, the question whether the state courts have spoken on the matter does not necessitate finding an authority dealing precisely with a deduction claimed under the federal income tax law. The point is whether the state court has given the meaning and proper application of the state law to fix the *real incidence* of the state tax.

Therefore the hypothesis upon which the plaintiff presses his case necessitates an examination of the Wisconsin law and judicial utterances respecting it. It may, however, be noted that the position taken by the plaintiff, viewing it from the standpoint of the administrators of the federal income tax law, is not at all novel, and, notwithstanding the insistence of the defendant, it for many years has found recognition in regulations promulgated under successive income tax laws, and not the least important is the fact that such regulations were re-enacted subsequently to the decisions of the Supreme Court upon which the defendant here so confidently relies; that like recognition has been and is being given to the principle by the department and the tax board in applying the regulations referred to; and that it is accepted by the text-writers in dealing with the question, the latter not only assuming the binding force of the principle, but, in attempting to aid in the application thereof, classify the states with reference to the imposition of the state inheritance tax upon the "right or privilege *to transmit* rather than upon the right or privilege *to receive or succeed.*" Holmes, Federal Income Taxes, 6th Ed.

Regulations of the Treasury Department, promulgated under authority of the Revenue Act of 1921 (42 Stat. 227) subsequently re-enacted, and now in force, are as follows:

"Estate, succession, legacy, or inheritance taxes, imposed *by any state,* territory, or possession of the United States, or foreign country, are deductible by the *estate,* subject to the provisions of section 214, *where, by the laws of the jurisdiction exacting them,* they are imposed upon the right or privilege *to transmit rather than upon the right or privilege of the heir, devisee, legatee, or distributee, to receive* or to succeed to the property of the decedent passing to him. Where such taxes are imposed upon the right or privilege of the heir, devisee, legatee, or distributee, so to receive or to succeed to the property, they constitute, subject to the provisions of section 214, an allowable deduction from his gross income.

"Where, in accordance with a direction contained in the testator's will, the taxes upon the right to receive any particular devise or devises, legacy or legacies, are so payable as to relieve the particular devisee or devisees, legatee or legatees from the burden thereof, then the person or persons entitled to the fund or other property out of which pay-

ment is made may not take deduction of the taxes so paid, but deduction thereof is available only by such devisee or devisees, legatee or legatees; each, if there be more than one, being authorized to deduct such part of the taxes so paid as he would otherwise have been entitled to do had there been no such testamentary direction.

"Where there is a life estate and a remainder, and, by the laws of the jurisdiction imposing them, the taxes in respect to both interests are payable out of the remainder interest, with no legal obligation imposed whereby the remainderman is entitled to reimbursement, then deduction of the taxes so paid may be taken only by the remainderman. Where, in the case of an annuity, the taxes in respect thereto are, by the laws of the jurisdiction imposing them, payable in the first instance out of the fund set aside for creating the annuity, but are to be repaid or restored to such fund from the annuity, then deduction thereof may be taken only by the annuitant.

"The accrual dates of such taxes shall be the due date thereof except as otherwise provided by the law of the jurisdiction imposing them. Where deduction is claimed of any such taxes, the amount thereof and the name of the state, territory, or possession of the United States, or foreign country, by which they have been imposed shall be stated in the return."

What, then, in view of legislative and judicial utterances, is the law of Wisconsin upon this fundamental question of the incidence of that state's inheritance tax? In an endeavor to answer, it is not necessary to review historically all legislative attempts nor ensuing judicial interpretation that led to overthrow of earlier laws. Sanderson v. Mann, 76 Wis. 469, 45 N. W. 526, 46 N. W. 51. Whether any so-called inheritance or succession tax is possible under the state Constitution, expressly or by strongest intimation or implication received an affirmative answer in Black v. State, 113 Wis. 214, 89 N. W. 522, 90 Am. St. Rep. 853, although the court therein, with reluctance overthrew the second act passed by the Legislature to achieve the object. That case, requiring attentive consideration of the constitutional possibilities, brought from those attacking the law, three concessions:

(1) That there is no objection to a succession tax as such, and that it is not a tax on the property of the estate already taxed.

(2) That the *right* or *privilege of receiving* property upon the death of the former owner is so far different from other property or *subjects of taxation,* that it may well be classed by itself.

(3) That classification, based on differences between lines of descent or distribution, is well founded.

The court was considering chapter 355 of the Laws of 1899, of which the New York law of 1892 (Laws 1892, c. 399, as amended) was declared to be the "prototype." I think it is fair to say that the three concessions above were accepted by the court in its then effort to test out the validity of the act, and although there was then and thereafter much discussion respecting the asserted scope and applicability of the Wisconsin constitutional rule of uniformity, whether it was limited to *property,* whether it forbade excises or the like, the course leading to an adjudication of invalidity was in substance this: The law came from New York, whose courts, prior to its adoption in Wisconsin, had construed one of its sections as operating "to apply the *limitations* of the act to the aggregate value of the property or estate transferred, and not to the share of each individual beneficiary," and, said the court, *"we must and do apply the same construction to the section."* See pages 212, 213. (Italics supplied.) Now, the section in question, literally identical in the laws of the two states, dealt with definitions of "estate" and "property" as those terms were used in the acts, thus:

"Section 19 [section 22 of New York Act]. The words 'estate' and 'property,' as used in this act, shall be taken to mean the personal property or interest therein *of* the testator, intestate, * * * *passing or transferred to* those not herein especially exempted from the provisions of this act, and *not* as the property or interest therein passing or transferred to individual legatees, devisees, heirs, next of kin, * * * and shall include *all personal property or interest therein,* whether situated within or without this state, over which this state has any jurisdiction for the purpose of taxation. The word 'transfer,' as used in this act, shall be taken to include the *passing of property* or any interest therein in possession or enjoyment, present or future, by inheritance, descent, bequest, * * * in the manner herein prescribed."

When, therefore, the court sought to apply this law with the construction of this section by the New York decisions, as the *Wisconsin court interpreted and accepted them,* it entered upon its discussion by noting the three concessions of constitutional possibilities, supra, and proceeded illustratively to state the contentions upon the law thus:

"There are two ways in which it is said

that this law discriminates between members of the same class: First. No tax is to be collected unless the value of the whole estate transferred equals or exceeds $10,000; but, if it does exceed $10,000, then the tax is to be paid upon the *whole property*. Thus, while one collateral heir, who receives $9,900 from one estate, pays nothing, another, belonging to the same class, who receives just $10,000, is required to pay a tax on his whole legacy. This is said not to be exemption, but unjust discrimination. Second. Suppose A and B die possessed of estates of the net value of $9,900 and $10,000, respectively, each having made a will bequeathing his property to collateral kindred of the same class; the man who receives $2,000 under A.'s will pays no tax; while the man who receives $2,000 under B's will is obliged to pay a tax, though each is of kin in the same degree to his respective testator, and hence belongs to the same class."

And the court proceeds:

"These contentions are met by the respondents by the proposition that only taxes on *property* are required to be uniform; this is a tax upon a *privilege \granted by law,* namely, the privilege of *inheriting* property or *receiving* the same by will; the privilege is not a natural right, but purely a privilege granted by law, and it may be *modified* or *repealed at the will* of the Legislature, subject only to constitutional provisions." .

Eliminating the observations of the court in disposing of the respective contentions on the case, the court, after holding that, because the law discriminated, in that it made taxability (either of the transfer or the transferee) *depend* upon the size of the estate out of which legatees similarly situated receive their legacies, concluded:

"We have reached the conclusion reluctantly. We should far rather have sustained the law, but the conclusion has been forced upon us. We agree with the general principles which have been approved by the overwhelming weight of authority in the courts of this country with reference to inheritance or succession tax laws. Those principles are, in brief, that such taxes are *taxes on the right to receive property,* and not on the property itself; that classification between lineal and collateral relatives and strangers does not violate the rule of uniformity, nor the principle of the equal protection of the laws; and that reasonable *exemption of small estates* may be allowed without violating uniformity. We have been compelled to condemn the present law, notwithstanding the foregoing general conclusions in favor of the

validity of such laws in general, because, under its peculiar provisions, *unlawful discrimination necessarily results between beneficiaries of the same class."*

The italicized clauses are, as will be seen, significant in considering the ensuing legislative and judicial consideration of the matter.

The next legislative effort to establish an inheritance tax is found in chapter 44 of the Laws of 1903—passed just one year after the decision of the Black Case. That law, in its basic features, is identical with the law to-day. It became the subject of renewed attacks, upon whose consideration and disposition the Supreme Court of the state reviewed its prior decision in the Black Case, and likewise rejected additional grounds of asserted constitutional infirmity. It is not needful to set forth the language or detail of the new act, for an abstract thereof, as found in Nunnemacher v. State, 129 Wis. 196, 197, 108 N. W. 627, 9 L. R. A. (N. S.) 121, 9 Ann. Cas. 711, will suffice. It is of some significance, however, that the court, at the threshold of its consideration, made the following observation:

"A previous law attempting to tax inheritances and bequests (chapter 355, Laws 1899) was before this court in the case of Black v. State, 113 Wis. 205, 89 N. W. 522 [90 Am. St. Rep. 853], and was there held unconstitutional for the reason that it provided for unlawful discrimination, in that a beneficiary receiving a legacy or inheritance from an estate under $10,000 paid no tax, while a beneficiary standing in exactly the same relation to the decedent and receiving a legacy or inheritance of the same amount from an estate exceeding $10,000 was obliged to pay a tax. In that case it was not intended that an inheritance or succession tax could not lawfully be levied in this state. In fact, the validity of such legislation, as a general proposition, was conceded; but the contention was that the law in question made unlawful discriminations, and hence was void. From this concession it resulted that this court assumed, rather than decided, in that case, that an inheritance tax law making no unlawful discrimination between heirs or beneficiaries could be passed in this state which would be constitutional. *It was doubtless in response to the suggestions of the opinion in that case that chapter 44, Laws of 1903, which is now attacked,* was passed." (Italics supplied.)

The new law, upon even cursory reading, reflects obedience to the suggestions in the Black Case, in at least these particulars:

(1) It eliminated a portion of the defini-

tion of "property" or "estate" found in the earlier law, thereby to remove all questions respecting the necessity of limiting the act in any way to depend upon the total property of a testator or an intestate, which limitation in the Black Case was held, because of the New York law, and its accepted interpretation, to invalidate the earlier law under the Wisconsin Constitution.

(2) The act unequivocally sought to place the *incidence* of the tax upon or against the transferee. It reflects a purpose to recognize the distinctions between an estate tax and a legacy tax, by confining the law, its burdens, and its operation clearly to the second and third concessions made and adopted in the Black Case. It assumes and seeks to effectuate the power to tax the *right to receive property*. It seeks to obey the principles of permissible classification announced in the earlier case.

(3) It significantly omitted to accept the suggestion of the Black Case that "reasonable exemption of small *estates* also may be allowed without violating uniformity." Significant, in my judgment, because the main ground of decision in the Black Case presents quite insuperable obstacles to making either taxation or exemption of legacies *depend upon whether they came from a large or from a small estate*. Therefore, in the new act, the Legislature, instead of exempting *estates* from the operation of the law, fixed the *incidence* of the *exemption*, if we may so term it, *to* or *upon* the *transferee* of a legacy or devise, or a distributive portion of any estate. It gave to legatees or transferees partial immunity or exemption from taxation, and measured it in terms of money, regardless of the size or value of the *estate* out of which the property transferred *to* them came.

It may be that in the Black Case the court really intended to deal with partial *exemptions* of *legacies*. But, clearly, the Legislature intended to exclude all doubt on the subject. The Nunnemacher Case was followed by Beals v. State, 139 Wis. 544, 121 N. W. 347, and State v. Pabst, 139 Wis. 561, 121 N. W. 351. In the former, upon renewal of the attack against the law, three grounds were advanced: (1) That the *right to take property* by inheritance or by will is a natural right, protected by the Constitution, which cannot be wholly taken away or substantially impaired by the Legislature; (2) that the power of taxation under the Constitution is limited to property only, and that an inheritance tax is an excise levied upon a right or privilege, hence unconstitution-

al; (3) that, even if the Legislature has the power, it must be exercised subject to the constitutional rule of uniformity, and the law violates that rule.

[1] The decision accepted the first, but denied the second and third, propositions; and this result was reached by reiterating the second and third concessions of the Black Case, but denying the contention made by the state in that case that the right to take by will or by inheritance was wholly a creature of the Legislature. It upheld succession taxes as proper excises or burdens upon the right or privilege of taking, but also imposed the necessity of reasonableness and uniformity. Both the Nunnemacher and Beals Cases, in vigorous majority and minority opinions, asserted or conceded the power to levy a succession or inheritance tax. The divergence of view arose upon the application of rules of reasonableness or uniformity, of classification, and, particularly, the power to measure progressiveness of the tax by mere differences in value of the property transferred. See the dissenting opinions of Dodge and Cassoday, Justices, in the Nunnemacher Case, and of Timlin, Justice, in the Beals Case. Not the slightest divergence of opinion is found upon this proposition, viz.: That, if the tax is sustainable, the legislative purpose of imposing it against the *recipient* of the transfer is entirely clear. That such is the law of Wisconsin appears in later cases: Montague v. State, 163 Wis. 58, 157 N. W. 508; Estate of Carter, 167 Wis. 89, 166 N. W. 657; Estate of Schlesinger, 184 Wis. 1, 199 N. W. 951; Estate of Shepard, 184 Wis. 88, 197 N. W. 344; Will of Kelley, 187 Wis. 422, 204 N. W. 475; Estate of Le Valley, 191 Wis. 356, 201 N. W. 941.

At no time has the court stated the matter more categorically than in the Shepard Case, supra: "An inheritance or succession tax is a tax on the right to receive property from a decedent. *It attaches to a person, and not to property, or to an interest in property*, though it is imposed and enforced through a control of the transfer of the property. The only other relation that the property has to it is that its value measures the amount of the tax." And more recently, in the Le Valley Case, supra, the conclusiveness of the court's view is manifested by its ruling that, where a will directs executors to pay inheritance taxes, such direction, when complied with, *increases the amount of the original legacy,* and the increase is likewise taxable. It is true that the court declined to enter upon a consideration of the formula by

which the theoretical infinity of such increases could be averted. The Supreme Court of the United States has expressly recognized this as the "meaning and proper application" (Keith v. Johnson) of the Wisconsin law. Schlesinger v. Wisconsin, 270 U. S. 227, 46 S. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224.

If, therefore, in the development of succession tax laws, a distinction has arisen between such as seek to place a tax upon an estate of a decedent, or upon its representatives, which regardless of distribution, is a primary burden amounting—as suggested in the New York cases—to an appropriation for the benefit of the state, and those which seek to place a tax upon transferees, which "attaches to a person," the burden of the tax being "enforced through a control of the transfer of the property," the law of Wisconsin is clearly within the latter class. Whatever speculation may be indulged to-day over the possibility of sustaining a law of the former class under the Wisconsin Constitution, the present law and its consistent interpretation forbid any thought that the Legislature, since the Black Case, has ever attempted to enact such a law. So it is entirely clear that in this classification of the types of laws, if the regulations promulgated by the Treasury Department and the concurrent recognition of the tests therein found by the Supreme Court are to be respected, the Wisconsin tax must be administered on this matter of deductibility, as the plainttiff claims.

Coming to a more particular consideration of the case relied upon by the defendant, Keith v. Johnson, it is believed to be a most persuasive authority to support the plaintiff. Its persuasiveness arises out of the clear recognition which, from time to time, has been given to contrariety of. New York rulings, in various cases coming to the Supreme Court. It refers to the earlier New York cases, reviewed in such cases as U. S. v. Perkins, 163 U. S. 625, 16 S. Ct. 1073, 41 L. Ed. 287, and Prentice v. Eisner (D. C.) 260 F. 589 (see 271 U. S. 6), and in summing up the effect of the Perkins decision, said:

"Following the decisions of the New York court, it was held that the transfer tax is not imposed on property but on the transfer, and that the property does not pass to the heirs or legatees until, by the enforced contribution to the state, it has suffered diminution to the amount of the tax."

It may be noted that even this estimate falls far short of the very clear characterization which the Supreme Court of Wisconsin has given to its tax laws and to the tax imposed. But, in the Keith Case, the court was finally confronted with the contrariety of the New York rulings upon this fundamental matter, and its purpose to clearly respect the latest, as binding, rulings, is shown thus:

"The government cites N. Y. Trust Co. v. Eisner, 256 U. S. 345 [41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660]. In that case there was involved the amount of the federal estate tax under section 201 of the Revenue Act of 1916, 39 Stat. 756, 777 [Comp. St. § 6336½b]. Section 203 [Comp. St. § 6336½d] provided that there should be deducted from the value of the gross estate funeral expenses, administration expenses, claims against the estate, certain losses, 'and such other charges against the estate as are allowed by the laws of the jurisdiction' where the estate was administered. When that case was before this court the latest decision of the New York Court of Appeals, having a direct bearing upon the matter, was Matter of Gihon, 169 N. Y. 443 [62 N. E. 561]. It was there held that the state transfer tax was the same as the federal inheritance tax imposed by the War Revenue Act of June 13, 1898, chapter 448, 30 Stat. 448, which was considered by this court in Knowlton v. Moore, 178 U. S. 41 [20 S. Ct. 747, 44 L. Ed. 969]. That the tax was not primarily payable out of the estate, that it was a tax not upon property, but upon succession, 'that is to say, a tax on the legatee for the privilege of succeeding to property' and that payment of the tax by the personal representative was for the legatee and not on account of the estate. In harmony with that case this court held that the state transfer tax paid by the executors was not deductible in calculating the amount of the federal estate tax. Since then the courts of New York, notwithstanding the Gihon Case, have construed the statute in harmony with the earlier decisions of the New York courts and United States v. Perkins, supra."

The court then quotes from Home Trust Co. v. Law, 204 App. Div. 590, 198 N. Y. S. 710 (a later decision than Gihon): "Aside from authority and theory, we think it was the clear legislative intent, as indicated by the various provisions of the tax law, that in calculating the net income of the estate of a decedent for income tax purposes the amount paid by an executor during the year in satisfaction of a transfer tax should be deducted. The income tax payment is made by the executor of the estate from funds of the estate and not from funds belonging to legatees. Kings County Trust Co. v. Law, 201 App.

Div. 181 [194 N. Y. S. 370]. The transfer tax payment is made by the executor from the funds of the estate. 'The transfer tax is imposed upon the estate of the decedent as it exists at the hour of his death, and its value is to be fixed as of that time.' Matter of Hubbard, 234 N. Y. 179 [137 N. E. 17]. Thus the tax is measurable, not by the funds received by a legatee, but by the funds the executor receives. As the burden of paying the income tax, as well as the burden of paying the transfer tax, is cast upon the executor, and as the taxable income of the estate is under the terms of the tax law measurable by gross income received less taxes paid, it would seem clear that the person paying the income tax, namely, the executor, is entitled to deduct the very transfer tax which he himself pays"—and concludes: "This decision was affirmed by the Court of Appeals without opinion [Everett v. Supreme Council] 236 N. Y. 67 [139 N. E. 780]. This court *will follow the decisions of the state courts* as to the *meaning and proper application of the state transfer tax law, any expressions in its earlier decision to the contrary notwithstanding."*

It is therefore quite immaterial whether the Wisconsin court has dealt with the narrow question of *deductibility* of a tax in a particular case, for, as shown in the Keith Case, that depends fundamentally and wholly upon the ascertainment of the state law in its meaning and application with respect to the *real incidence of the tax.* That test which the Supreme Court announces, and which it sought to apply by reference to the New York law and decisions thereunder, excludes the thought that in a legal sense there may be *dual* but *equal incidences* of a succession tax, or *dual* and *equal resulting obligations arising* out of *such incidences,* or *dual* and *equal rights of deduction.* The tax, in a legal sense, must go against a property, a person, or a right, and not against one or another of these, alternatively, nor against more than one of these, cumulatively. The legal obligation arising out of a single incidence determines the situs of the right to deduct under the federal law. As has been indicated, the Keith Case did not and does not reserve to the federal court, or to the federal authority, the right to make a choice between conflicting views of the state law, or between conflicting views of different states.

The problem was solved in that case by the court's rejecting the view of Matter of Gihon, supra, viz. that under the New York law it was "a tax not on property, but on succession; that is to say, a tax *on the leg-*

25 F.(2d)—49

*atee* for the privilege of succeeding to property," and that the payment of the tax by the personal representative was *"for the legatee"* and *"not on account of the estate"*—and was rejected in the Keith Case on the sole ground that the *later decisions* of the New York courts were not in harmony therewith. See Keith v. Johnson, supra, page 7 (46 S. Ct. 415). Therefore, too, it is wholly immaterial, if it be true, as I think it is, that the New York law and the Wisconsin tax statutes are *now* alike. We are dealing with the interpretation and effect of the law as reflected in their terms and in the decisions of the courts of the two states respectively. But, even if we were to consider which of the two states has adopted the sounder view, and granting that the New York courts have recognized the right of the executor to make the deduction, I think it open to grave doubt whether it can be asserted on that ground alone that the New York courts have held, that they, or that the Supreme Court of the United States, if the question were one for it to decide, would hold, e. g., that a legatee who receives under the New York law a legacy of $2,000, and himself pays *a tax* of $200 thereon, *cannot deduct the tax so paid from his income under the federal law, merely because the incidence of the tax was solely against the estate, against the executor, and that the latter had not only the right to pay the tax, but the exclusive right to take the deduction from the income of the estate, in which the legatee may have no interest whatsoever.* But whether this is doubtful, or whether the right of the executor is clear and *exclusive* under the New York law (because of the asserted "appropriation" of the tax out of *property* at the moment of death), we recur to these alternatives:

(1) That such a law, it was assumed by the Wisconsin legislature, could not constitutionally be enacted in Wisconsin after the decision of the Black Case; or

(2) That such a law was in fact rejected by the Wisconsin Legislature, and the present law consistently has been respected as laying a tax with its incidence upon the legatee.

If, for the purpose of testing out this matter of comparison of the course of decision between the two states respectively, we resort to other hypotheses, a like conclusion would be reached. Suppose an estate of a testator is inadequate to pay legacies in full; assuming that, in the absence of a provision for priority in the will, abatement would be ordered ratably, would any one suggest that under either the New York or the Wisconsin law an abatement other than ratable might

be justified, to the end of realizing a larger tax than would otherwise be assessable upon ratable abatement? No one would suppose that part of one legacy could be taken to meet a larger tax upon another. Or, suppose under either statute a legatee, within his undoubted right, renounces his legacy; does he also renounce the tax, or is the latter assessed, leaving merely a residue to pass elsewhere which the law, or another clause of the will, will *subject to another assessment?* Plainly, so it seems to me, the renunciation of the legacy renounces the incidence of the tax; and the entire legacy—depending upon the will or the law—would go elsewhere, and the latter would furnish the new incidence of the tax.

Nor is the defendant's position strengthened by the concluding paragraph of the opinion in Keith v. Johnson, which is cited with much repetition:

"By indicating that the latest decisions of the state courts will be followed here as binding, it is not intended to intimate that a different view is entertained as to the construction properly to be given the state law. In fact, we agree with that construction. * * * And we are of opinion that the transfer tax is deductible [by the executor]. It was *primarily* payable by the respondent out of moneys and other property of the estate; and it was so paid by her. While this lessens the amount for distribution among the heirs, it cannot be said that they bore any part of that tax. As well might it be claimed that *they* paid the *funeral expenses and debts,* if any, of the intestate. No part of the transfer tax so paid could be taken by the heirs as a deduction in calculating their federal income taxes."

In view of the binding quality of state adjudications, as the only test to be applied, it may be said with entire respect that this quotation, when offered to support the defendant's position, reflects merely a begging of the whole question. It is true, if the New York decisions respecting the incidence of the tax, viz. against the entire *property* of decedent, are first accepted as properly exhibiting the New York law. It is not and cannot be true that the contrary of the Wisconsin decisions respecting the Wisconsin law can be eliminated by this observation. If it be true that the New York transfer tax cannot "be said to be borne" by heirs because the executor may pay it out of moneys and other property of the estate, that such tax has the same relationship to the executor and to property of the estate as "debts, if any, of the intestate," it must be replied that that gives the tax an incidence which, in the Black

Case, overthrew the first law, and which has been denied so repeatedly under the present law. Plainly, cost of administration and debts of a decedent, upon entirely different considerations, cannot be regarded as obligations of heirs or legatees. Their incidence for purposes of enforcement is admittedly against the decedent or against his property. They burden the property, in gross.

It may be observed, in further reference to the purpose of the Wisconsin Legislature in passing, and of the Supreme Court in interpreting, the present law, that in both the Nunnemacher and the Beals Cases, supra, the court in fact reviewed and considered to the utmost the question whether the tax, even assuming it to have an incidence against the transferee, was violative of the rule of uniformity. As hereinbefore noted, the court has undoubtedly held that the statute levied a tax which attached to the person; that is, with its incidence on the transferee. But in the Beals Case, while conceding power to "impose taxes for all proper public purposes upon all taxable property or rights created," including "a succession or inheritance tax," the law in question—the present law—evoked this sharp dissent:

"In the interpretation of a Constitution the state must be considered perpetual, and, because all men must die, a succession or inheritance tax is when the same rate is applied to all within the same lawful class upon an uniform rule. The 'tax' imposed by the statute in question is not an indirect tax, which one may incur or not incur at his option and which can be shifted, but is inevitable and *without incidence,* and is a percentage upon the value of the property. It is therefore not analogous to a stamp duty or an excise tax, but is a direct tax. Its essential nature cannot be altered by the Legislature or the courts arbitrarily giving it a name. I am convinced that, while the Legislature of Wisconsin had power to impose a succession or inheritance tax, such tax came within the command of the Constitution that 'the rule of taxation shall be uniform.' A progressive tax is the very antithesis of a tax by uniform rule. Classification of property according to amount or value for the purpose of taxation is contrary to this command of the Constitution. This provision expressly forbids a progressive rate of taxation within a legitimate class, and does not permit evasion of its command by the simple expedient of unconstitutional classification according to amount or value." Per Timlin, Justice, 139 Wis. page 560, 121 N. W. 351, 131 Am. St. Rep. 1061.

It thus appears clearly that, obediently

to the Black Case, the Legislature and the court in its later interpretation have been in entire harmony, and that even the dissenting opinions reach merely the question whether attempt to tax progressively upon progressive valuations *within* a legitimate class does or does not introduce a constitutional repugnancy. The dissenting views conclusively assume the legislative purpose to fix the tax against transferees, but assert that, even so, progressive taxation, based merely upon difference in value of property transferred, introduces, evasively, a nonuniform, direct, property tax.

It is believed that the case might be rested upon the foregoing discussion of the law of Wisconsin as a justification for the plaintiff's claimed right of reduction. Plainly, the regulations of the Internal Revenue Department are in clear conformity with the principles recognized in the Keith Case; that is, such regulations aim to guide the administration of the federal tax law with respect to deductions dependent wholly upon the incidence of the state tax, whether it is an estate or a legacy tax. The existence and effectiveness in practice of such regulations entitles them to be respected as presumptively authoritative, even though, without them, the principles they embody should be recognized and enforced.

Recurring now to the case before us, with a view of applying the foregoing to the particular facts, the plaintiff's bequests under the will of George H. Lawrence, deceased, are:

(1) A bequest of $50,000 given by the codicil.

(2) Interests in the income of the residue held in trust: (a) One-third of the income of the residue for life. (b) A remainder interest for life, after the death of Louise Van Dyke Hauxhurst, in the one-third of the income given to said Louise Van Dyke Huaxhurst for life. (c) A remainder interest for life, after the death of Louise Lawrence Van Dyke, in the remaining one-third of the income, which remainder interest consists of said entire one-third if Louise Van Dyke Hauxhurst is not then surviving, or one-half of said one-third if Louise Van Dyke Hauxhurst is then surviving, with remainder interest, however, in the other half of said one-third of the income on the death of said Louise Van Dyke Hauxhurst.

The Wisconsin law, in its broad enumeration of "subjects liable" to the tax, specifies: "Any transfer of property, real, personal or mixed, or any interest therein or income therefrom in trust or otherwise, to any person. * * *" And in further specification: "When any such person * * * becomes beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer." And the act exempts from the operation of the law property or estates which have *vested* in such persons before the act shall take effect, and provides that "contingent interests created by the will of any person who died prior to the passage of this act shall not be taxed."

It may be assumed that the outright bequest of $50,000 was a transfer to the plaintiff, taxable against him. Such assumption may be rested here upon the recognition thus given it by the Commissioner of Internal Revenue, who upon the plaintiff's petition acknowledged *him* as the taxpayer entitled to deduct the tax paid thereon in his return of income for the year 1924. Apparently the Commissioner saw no difficulty in fixing that as the incidence of the tax, and possibly foresaw difficulty in attempting to justify the exclusive right of deduction in the executor, if the latter saw fit to charge it against the remainderman. Apparently, also, the fact, as doubtless it was, that the executor made the *actual* payment of the tax on this legacy, did not stand in the way of the assertion of plaintiff's right. When, however, the other interests came to the consideration of the Commissioner, the plaintiff's contention was denied.

[2] Under the foregoing broad definition of "subjects liable" as taxable transfers, a distinction between an outright gift of $50,000 and a gift of income during life to the same legatee, in that the one is, and the other is not, a transfer *to* him of property or an interest therein or income therefrom, within the meaning of the statute, seems wholly without justification. The third bequests are not different, except in their complexity. The legatee, of course, takes and can take only what the testator succeeds in giving. All bequests or interests in trust may be more difficult to value as taxable transfers, to the end that the tax may be admeasured, but they do not for that reason lack a *transferee,* within the meaning of the act, nor do they arouse a different incidence. Such transfers, as has been noted by commentators, may stimulate a preference for an *estate* rather than a *legacy* tax because the former "simplifies the task of the tax collector," whereas the latter, viz. the tax "on the right to receive," necessitates adjustment of the burden to those who are benefited. Gleason & Otis, Inheritance Taxation, 497.

But *that* does not give a right of choice

to the taxing authorities to construe the tax law to suit the convenience of a particular case. What the Commissioner did in the present case is substantially this: The outright cash legacy was acknowledged to be a transfer whose tax ran against, or was imposed upon, the plaintiff, wherefore deductible by him; but with respect to what is additionally *received* and *receivable under* the terms of the will by him—and his colegatees—the attempted distinction at once introduces a repugnancy to the legislative and judicial theory of the Wisconsin law as we have indicated. First, it ignores the objective which the Legislature achieved when, upon compulsion of the Black Case, it excluded the original New York definitions of "property" and "estate" from the present Wisconsin law; secondly, it wholly disregards the plain language of the present law, which comprehensively defines taxable *subject-matter*, and imposes the tax *on the transferee;* third (and this may be already implied in 1 and 2), it disregards what the taxing authorities of Wisconsin in truth did in this very case, in casting the tax, in that, in excluding the plaintiff's, and recognizing the executor's, right of deduction, the incidence of the tax is placed either upon the executor, or, according to the New York theory, upon the property constituting the *trust corpus*.

Upon the first and second of these nothing will be added to what is hereinbefore said, because it seems clear beyond controversy that, in the successive consideration of either the wisdom or the constitutional possibilities of inheritance taxation in Wisconsin, no doubt whatever exists respecting the *theory embodied* in the present law. And that theory excludes the hypothesis of coembodiment of *any other theory*—particularly one which the legislature apparently was forced to abandon because repugnant to the state Constitution. But, considering the third, as I have stated it, let it first be asked: Did the executor or trustee under this will receive any *transfer of property*, which, without consideration of present, possessory, or future contingent and expectant right of beneficial enjoyment by others, was *taxable against him*, either individually or as a functionary? Not at all. What was done, what was the only thing possible to be done, under the state law, was and is this: The several *transfers to* heirs, devisees, or legatees were here ascertained. They consisted of (1) cash legacies (among them $50,000 to plaintiff); (2) a legacy of one-third of the income on the residue to plaintiff, and a like legacy to each of two colegatees; (3) legacies of in-

come to each of the three legatees, contingent upon survivorship over either or both of the other two; (4) the legacy or devise in ultimate remainder of the estate after the death of all life legatees.

Now it is not at all necessary to consider how these transfers would be classed as "vested," "contingent," or "expectant," under principles dealing with trust, or nonabsolute, present estates. It suffices that each of the foregoing was and is clearly a *transfer* of an interest in property, or in the *income* thereof, to each of several *named* transferees who *take* presently, in possession, or in beneficial enjoyment, or in the future, contingently or expectantly, within the definition of the state tax law. The aggregate of these transfers is, of course, identical with the potential *transferability* of the testator's entire estate, howsoever otherwise he might have exercised, but did not exercise, it. The state thereupon, having discerned these several transfers, treated them, as it must, in severalty, transfers *to* named transferees *(not the trustee)*, valued them, fixed the statutory tax, whereby, in the sense and by operation of the law, it was *imposed*, in severalty, upon these transferees, including the plaintiff. And the large sum which the executor paid—that is, manually handed over to the state—was merely the aggregation, in a legal sense, of the taxes, and the payment was for the transferees. Nor does the Wisconsin law, that "every such tax shall be and *remain a lien upon the property transferred* until paid, and the person to whom the property is transferred and the administrators, executors, and trustees of every estate so transferred shall be *personally liable* for such tax until its payment" (Section 72.05, Wis. Stat.), in the slightest degree disparage the plaintiff's, nor support the defendant's, contention. That provision, quite like others in the law, aims to establish machinery, means, and assurances for *payment* of the tax, regardless of its incidence.

No one would venture to claim that the law intended thereby to impose, upon a court or testamentary functionary, personal liability in the sense that, upon assumption of trust duties, the functionary thereby added to his personal and individual debts the obligation to pay this tax—if necessary—out of his personal estate; nor does it mean that the legatee is *personally* liable, whether or no he *receives* the subject of the transfer to him; nor does it mean that the functionary must pay, whether or not the transfer is not, because it cannot (perhaps) be, effectual. What it does mean is that the trustee, if he

holds the property which is the subject of transfer, cannot allow the transfer to be *effectuated through him as the medium, without payment of the tax by the transferee*, except on pain of *his* (the trustee's) personal liability for that *default*. It means that the liability of the transferee, who *receives* the transfer without payment of the tax (which as the Supreme Court says "attaches" to his *person*), shall continue; that is, remain unimpaired. The statute *conditioned* the *delivery* and the *receipt of the subject-matter* of transfer upon, and subject to, the *payment* of the tax *on the transfer,* as a means of and assurance *for* payment. And that is nothing more than imposing on the executor the *duty of delivery only* on compliance with the condition. *But it does not impose the transfer tax on him,* with *liberty* to pay it out of *any* property in hand, regardless of the latter being the subject-matter of transfer *elsewhere.* It assumes that the tax has an incidence, *not* against the executor, but it obligates him not to ignore the real incidence. Therefore it makes little difference whether failure on his part *creates a personal* liability. In that sense, every failure of a trustee to perform a trust duty may be "personal."

Therefore the state, in this case, did not, could not, ignore *the* transfers reflected in the will *to* the named transferees, and thereupon treat the executor or trustee as a sort of initial transferee *of the gross estate,* then figure up the taxes on transfers in severalty, and seek to *impose* their *aggregate* on the executor or trustee, with right or obligation on his part to pay such aggregate out of any gross estate in his hands. On the contrary, as indicated, it proceeded to ascertain the transfers, the transferees, "in trust or otherwise," valued the subject-matter of transfer, and, agreeably to the statute, admeasured the tax which thereupon "attached" to the person or persons *being transferees.* Immediately after the present law was held to reflect the theory herein recognized, the judicial purpose to enforce it, no matter how complex the transfers, was announced. State v. Pabst, 139 Wis. 561, 121 N. W. 351. The suggestion of the Commissioner of Internal Revenue that provisions of the statute dealing with trust estates may still, without express language, but inferentially, dominate the fundamental theory of the law, and enable the paying of a tax out of an estate *in gross,* is wholly repugnant to the plainest language of the law. If tenable, it compels renunciation of everything which the state has done or aimed to do to adopt the one theory believed to be possible under the Constitution, and, if recognized, must inevitably introduce into the law and its administration, on considerations of convenience, the option or right to adopt one or the other, or a hazy commingling, of two diverse theories of inheritance taxation.

[3] So, when the state law is clear, Keith v. Johnson leaves no discretion as to deductibility. The right is exercisable under the federal law upon "incidence" of the state tax; and, as indicated, difficulty of measuring or of apportioning taxes against or between transferees cannot shift the legal incidence, nor fix the taxes against property of a decedent, in gross. The regulations of the Treasury Department recognize and embody the conception that the tax must be fixed and imposed upon transfers and against transferees in severalty, whenever that is the theory of the state law.

The views thus entertained uphold the plaintiff in his entire contention, and they sustain the demurrer to the answer. An order may be entered, sustaining the demurrer to the answer, and, unless the defendant within 20 days shall file an amended answer, plaintiff may take judgment according to the prayer of the complaint.